Sovereign Camp, W. O. W., v. Sloan.*

(Division A.  June 16, 1924.  Suggestion of Error Overruled Aug. 28, 1924.)

[101 So. 195.  No. 24195.]

1. Exceptions. Bill of.  *Burden to prove bill of exceptions, signed by attorney of record instead of trial judge, correct, where denied under oath, on tendering party.*

When a bill of exceptions, sworn to under section 796, Code of 1906 (section 580, Hemingway's Code), by the attorney of record of the party tendering the same, in lieu of the signature of the

trial judge thereto, is denied on oath, the burden of proving that the bill of exceptions is correct is on the party tendering it.

2. Exceptions, Bill of. *Appellate court may look to instructions below as aid in determining correctness of bill of exceptions.*

Where the evidence, in support of and in opposition to the correctness of a bill of exceptions sworn to by the attorney of the party tendering the same, in lieu of the signature of the trial judge, under section 796, Code of 1906 (section 580, Hemingway's Code), is conflicting, the court may look to the instructions given the jury in the court below as an aid in determining such conflict.

3. Insurance. *Untrue answer to question in application as to consultation and attendance by physician will avoid policy.*

Where an application for an insurance policy on the life of the applicant provides that the applicant's answers to questions therein provides that the applicant warrants the truth of the statements, representations, and answers therein made, and that an untrue statement or answer shall avoid the policy, a negative answer to the question, "Have you consulted or been attended by a physician for any disease or injury during the past five years?" when the applicant had in fact consulted and been attended by a physician within five years, will avoid the policy issued thereon at the option of the insurer.

4. Evidence. *Judicial notice taken that hardening of arteries is disease tending to shorten life.*

The court will take judicial notice that hardening of the arteries is a disease and not a temporary ailment, and that it tends to shorten the life of the person suffering therewith.

5. Appeal and Error. *Objection that insurer failed to return or tender premiums paid on life policy cannot be made first on appeal.*

Where, in a suit to recover on an insurance policy, the insured defends on the ground that the policy is void because of a false statement by the insured in his application therefor, and fails to return or tender the premiums paid thereon, and no objection thereto is made in the trial court, none can be made in the supreme court for the first time.

*Headnotes 1. Appeal and Error, 4 C. J., section 1874 (1925 Anno); 2. Appeal and Error, 4 C. J., section 1874 (1925 Anno); 3. Life Insurance, 25 Cyc, p. 811; 4. Evidence, 23 C. J., section 1969; 5. Appeal and Error, 3 C. J., section 602.

APPEAL from circuit court of Lowndes county.

HON. THOS. B. CARROLL, Judge.

Action by 'Mrs. Mollie Sloan against Sovereign Camp, Woodmen of the World. From a judgment for defendant, plaintiff appeals. Reversed and remanded.

See, also, 99 So. 568.

*John F. Frierson,* for appellant.

The contention of the appellant is that on this state of facts and on the evidence in the case, the peremptory instruction which was asked for by the defendant should have been allowed. The court erred further in granting instructions for the defendant, which will be discussed later, and in refusing and modifying instructions asked by the defendant. We think the theory upon which the court permitted the cause to go to the jury was erroneous. First, because the answers in the application were made warranties; second, because the jury was wholly incompetent to say what disease or injury would tend to shorten life; third, because the condition of hardening of the arteries or *arterio-sclerosis* is a well known physical condition that undoubtedly does tend to shorten life and that stout men particularly who are approaching middle life are always anxious about it, and the court should have taken judicial notice of it; fourth, because the evidence undoubtedly shows that the insured was suffering from a physical condition that did actually cause his death within one year after the application was given, and which condition he knew or had reason to know, and kept hid by his answers; fifth, because the insured knew or had every reason to know of this physical condition from December, 1920, the date of the examination for life insurance by Dr. C. E. Lehmberg and also knowing this he placed himself under the care of Dr. Lehmberg and was constantly under his directions and care during the year 1921, prior to the application for insurance. The

entire contract makes these answers warranties. It was so stated in the insurance policy itself, in the application and in the Constitution and Laws. *The Co-operative Life Association of Mississippi* v. *Leflore,* 53 Miss. 1.

Nothing is better settled, both in regard to insurance contracts and contracts of all sorts, than that an untrue statement by either party as to a matter vital to the agreement, will avoid it, though there be no intentional fraud in the misrepresentation. Bliss on Insurance, 52; May on Insurance, 181, 182; *Fidelity Mutual Life Insurance Co.* v. *Miazza,* 93 Miss. 18, 46 So. 817; 18 C. J. 1138; 5 C. J. 589; *Continental Casualty Co.* v. *Semple,* (Ky.) 112 S. W. 1122, 1124; *Fidelity Mutual Association in Philadelphia* v. *McDaniel,* 57 N. E. 645; *White* v. *Providence Savings Life Insurance Society,* 27 L. R. A. 398. The case at bar falls within the principles announced in *Hoke* v. *National Life and Accident Insurance Co.,* 103 Miss. 269, 60 So. 218. See, also, *Williams* v. *New York Life Insurance Co.,* 96 So. 97.

So, we respectfully submit, that there was no disclosure of a fact material to the risk; but there was a concealing of this fact that was material to the risk. The insurance companies have good and sufficient reason for seeking such information. It will probably be argued that the court left it for the jury to say whether this was concealment of a treatment of a disease "tending to shorten life." It was not the province of the jury to say what would "tend to shorten life," or what would increase the hazard of the risk. The insurance companies have their medical examiners for that purpose.

In *Aetna Life Insurance Co.* v. *France,* 23 U. S. (L. Ed.) 401, the court held in reference to the questions and answers in the application which were made warranties by the terms of the contract, that the "materiality of such statements is removed from the consideration of a court or jury by the agreement of the parties that such statements are absolutely true and that if untrue in any re-

spect that policy shall be void." The case of *Hubbard v. Mutual Reserve Fund and Life Association*, 100 Fed. 722, 40 C. C. A. 665, holds the answer that appellant had not consulted a physician since childhood is breach of warranty when he had been treated within five years previous to application. See *Griffith* v. *Mutual Life Insurance Co.*, 36 App. (D. C.) 15, refusing to allow recovery where assured suppressed the fact that he had been attended by a physician; *Rodier* v. *Insurance Co.*, 32 App. D. C. 167, upholding directed verdict of lower court in favor of insurance company, where evidence showed falsity in insured's reports; *Nelson* v. *Nederland, etc., Life Insurance Co.*, 110 Iowa, 602, 81 N. W. 807, holding false statement that applicant's health was good and that he had no occasion to consult physician, avoids policy; *Tobin* v. *Modern Woodmen of America*, 855 N. W. 472, holding where insurance certificate makes truth of insured's statement in application that he is at the time in good health essential to validity of certificate, it is error to permit jury to excuse breach of such warranty on theory that false statement worked no prejudice.

A material false representation is a ground for the avoidance of a life insurance policy the same as any other contract. *Ebner* v. *Ohio State Life Insurance Co.*, 121 N. E. 315; 14 R. C. L. 1021; 14 R. C. L. 1022; *Helwig* v. *Mutual Life Insurance Co.*, 28 A. S. R. 578.

We submit further that it was the duty of the court to take judicial notice of the fact that *arterio-sclerosis* was a disease. 23 C. J. 146, Life, Health and Faculties; 15 R. C. L. 1130. We respectfully submit that the peremptory instruction for the plaintiff should have been granted.

The second instruction given plaintiff is clearly erroneous. It is positively and directly contradictory to the words which the parties solemnly set out in their contract and the contract of insurance agreed upon and determined by and between the parties; there was further

said above that the disease "was temporary in its nature and did not tend to undermine and weaken the constitution." The court has no right or authority to vary the terms of a written instrument in any such manner. The parties were over the age of twenty-one and supposed to be in their right minds and had the authority to contract as they saw fit. If the insurance company had wanted those words in the application they would have placed them there. If the insured had asked for the writing of those terms into the question they would not have been placed there.

*Owen & Garnett,* for appellee.

Instead of Sloan having perpetrated a fraud on appellant, we submit that the appellant perpetrated a fraud on Sloan; because it required the examining physician to interrogate him about fifty or sixty specific diseases, but not a word as to blood pressure, so that its own examining physician didn't consider that a blood test was required; and then, when the man was dead, appellant raises the point about blood pressure.

Appellant, in arguing that it was entitled to a peremptory instruction, relies on the *Leflore case,* 53 Miss. 1, and the *Miazza case,* 93 Miss. 18, 46 So. 817. In the Miazza case the court's comments on the Leflore case, which was decided in 1876, show clearly that the court had no intention of being bound by the principles laid down in the Leflore case. In the Miazza case Justice MAYES, referring to the Leflore case used some pertinent language which fraternal insurance orders would do well to remember.

Despite appellant's vociferous assurance that Sloan, at the time he made the application for a policy, had been recently treated for *arterio-sclerosis,* high blood pressure, and other things, we deny that there was any misrepresentation. We submit that neither Dr. Lehmberg nor

Dr. Brewer ever told Sloan that he had hardening of the arteries, or that either ever found anything more than high blood pressure, which all three of the physicians said was not a disease, but a symptom which might vary from day to day and yield to dieting and regular habits. Appellant cites 18 C. J. 1138 for a definition of disease. That definition is not the accepted definition in the law of insurance. See "Life Insurance," 25 Cyc. 810-816. Another case cited under appellant's definition of "disease" as taken from 18 C. J. 1138, is *Meyer* v. *Fidelity & Casualty Co.*, 65 N. W. 328, where the supreme court of Iowa was careful to distinguish between "disease" and a "temporary disorder."

The instruction given by the court below is in harmony with our views, and clearly makes the distinction which we think ought to be preserved between mere temporary disorders and those functional disturbances which are ordinarily denominated "disease" or "bodily infirmities." Our position has strong support in the case of *Manufacturers Indemnity Co.* v. *Dargon*, 58 Fed. Rep. 945, from the United States circuit court of appeals for the sixth circuit; Taft, J., writing the opinion. This authority is clearly in point and was evidently followed by the learned district judge in preparing his instructions in this case. See, too, *Continental Life Ins. Co.* v. *Young*, 113 Ind. 159; *Cady* v. *Fidelity & Casualty Co.*, 113 N. W. 967, (Wis.); *Hogan* v. *Mut. Ins. Co.*, 41 N. E. 663 (Mass.); *Logan* v. *Prov. Saving Life Assur. Soc. of N. Y.*, 50 S. E. 529 (W. Va.); *Des Moines Life Ins. Co.* v. *Clay*, 116 S. W. 232 (Ark.); *Corbett* v. *Mut. Life Ins. Co.*, 55 N. Y. S. 775.

The definitions of *arterio-sclerosis*, set out in appellant's brief, do not interest us because we deny that Sloan had *arterio-sclerosis* or that any physician said he had it.

The exact language of the question is as follows: "Have you consulted or been attended by a physician for any disease or injury during the past five years?" Since

physicians do not class high blood pressure as a disease, but regard it in Sloan's case as due to temporary causes which would yield to attention to his diet and habits, Sloan had a right to answer "No." 25 Cyc. 817. *Mutual Reserve Fund Life Ass'n* v. *Ogletree,* 25 So. 869; *Mass. Mutual Life Ins. Co.* v. *Crenshaw,* 70 So. 770; *Blumenthal* v. *Berkshire Life Ins. Co.,* 96 N. W. 17; *Brown* v. *Met. Life Ins. Co.,* 65 Mich. 306; *Prudential Ins. Co. of America* v. *Sellers,* 102 N. E. 897. Appellant relies on *White* v. *Providence Savings Life Assurance Society,* 27 L. R. A. 398, but we invite attention to the difference between the question in the application in that case and the question here. There the question was: "When and by what physician were you last attended, and for what complaint?" That is not the same question involved here. There, the man went to the doctor's office, told him he had coughed and spit blood, desired him to make a physical examination, and subsequently called at his office, consulted him professionally, and paid him. Both the question and the conduct of the insured differentiate that case from the case at bar. In line with the foregoing authorities we cite 14 R. C. L. 1071, 1074.

*Failure of Appellant to Pay Premiums into Court.* There is another reason why appellant cannot be heard to repudiate the contract sued on. Appellant does not allege when it learned of the alleged misrepresentation in Sloan's answers, and that is another defect in its notice under the general issue which prevents that notice from containing the substance of a good special plea. But when appellant learned of the alleged misrepresentation it should have refused to receive further premiums, and should have tendered back those paid, and if the tender was refused, should have paid them into court when suit was brought. *Nat'l Council K. & L. of Security* v. *Walton,* 136 N. E. 25.

It is clear from the record here that appellant's motion for a peremptory instruction was properly overruled;

that the appellant knew, or should have known, that Sloan had had high blood pressure some time prior to the date of the delivery of the policy; that the certificate of the examining physician showed a man in the prime of life and in excellent health; that high blood pressure was not a disease within the meaning of that word as used in the application and as defined by many authorities; that there was no misrepresentation; that the instructions correctly stated the law applicable to the evidence; that the notice under the general issue did not state the substance of a good special plea; that there was no tender into court of the premiums collected before appellant claims to have known of the alleged misrepresentation; and that there was ample evidence to sustain the verdict of the jury.

Argued orally by *Jno. F. Frierson,* for appellant, and *C. L. Garnett,* for appellee.

SMITH, C. J., delivered the opinion of the court.

The appellee brought this suit against the appellant on an insurance policy in her favor on the life of her deceased husband, Henry C. Sloan, and from a judgment in her favor the appellant has brought the case to this court.

Under its plea of the general issue the appellant gave notice of several affirmative defenses, one of which is:

"That the insured, Henry C. Sloan, filed an application for insurance with defendant prior to the issuing of the certificate on which the suit is based, and that said application became and was a part of the contract of insurance and by the terms of the said application, all the statements made therein by the insured were warranties.

"That in answer to the question in said application, 'Have you consulted or been attended by a physician for any disease or injury during the past five years?' the

insured answered, 'No,' and that said answer was a warranty and was untrue, because the insured, Henry C. Sloan, had consulted and had been attended by a physician for a disease within the past five years prior to making application for membership.''

The evidence was taken down by a stenographer who died before transcribing his notes and within the time allowed therefor.

Before a bill of exceptions could be prepared and tendered to the circuit judge, as provided by chapter 145, Laws of 1920, the circuit judge also died, because of which a bill of exceptions was prepared as in cases where no stenographer takes down the evidence, sworn to by counsel for the appellant, and filed with the papers in the case (see former appeal, 99 So. 568, from which it appears that the insurance policy sued on was regularly issued by the appellant to Henry C. Sloan on December 28, 1921, and that said Sloan died of apoplexy on November 8, 1922.

The application for the policy which was signed by Sloan contains the following provision:

''I hereby certify, agree, and warrant that all the statements, representations, and answers in this application, consisting of two pages as aforesaid, are full, complete and true, whether written by my own hand or not, and that any statements made by me for reinstatement shall be warranties, and I agree that any untrue statements or answers made by me in this application, or in any applications for reinstatement, or to the examining physician, or any concealment of facts in this application or to the examining physician, intentional or otherwise, or my being suspended or expelled from or voluntarily severing my connection with the society, or if I fail to comply with the laws of the society, now in force or hereafter adopted, my beneficiary certificate shall become void, and all rights of any person or persons thereunder shall be forfeited.''

Among the witnesses were Dr. C. E. Lehmberg and Dr.

W. E. Brewer, both practicing physicians, and I. H. Simon, an agent of the New York Life Insurance Company, whose testimony, according to the bill of exceptions, is as follows:

Dr. C. E. Lehmberg:

"That in the month of December, 1920, he examined Mr. Sloan, the insured, for life insurance in another company and discovered that he had high blood pressure, and so told Mr. Sloan, the insured; that he reported the condition of high blood pressure to the company for which he was examining the said Sloan, and that the said Sloan was denied the insurance applied for on account of the high blood pressure reported by witness; that the said insured during the month of January, 1921, following, placed himself under the care of the witness, Dr. C. E. Lehmberg, for treatment, and that the witness saw the insured professionally eight times between January and October of the year 1921, and treated him for hardening of the arteries or *arterio-sclerosis,* but did tell him that he had hardening of the arteries; that the witness prescribed proper diet and regular habits principally; that the last two times witness saw the insured professionally during that year, he, the witness, was called to the home of the insured and found him in bed, and there treated him for the said trouble."

Dr. W. E. Brewer:

"That he had seen Mr. Sloan, the insured, one time during the month of June, 1921, and found him suffering from high blood pressure; that the high blood pressure might have been temporary and might have been caused by improper diet, or something of the kind; that witness was called to see Mr. Sloan, November 2, 1922, and found him dead; that he had died suddenly, and of apoplexy, soon after retiring."

Mr. Simon:

"That the insured, during the month of December, 1921, had made application for insurance with the New

York Life Insurance Company, and had been examined by Dr. J. W. Lipscomb of Columbus, Miss., who reported that said Henry C. Sloan had high blood pressure and hardening of the arteries; that the New York Life Insurance Company thereupon declined to insure the said Sloan at the regular or normal rate for his age, but rated him up eleven years, that is, from the age of forty-one to the age of fifty-two, on account of the condition of high blood pressure; that witness got from his company a policy of insurance with the increased premium rate which had been raised from thirty-six dollars per one thousand dollars insurance to forty-five dollars per one thousand dollars insurance, and offered it to the said Sloan, and that the said Sloan declined to take it on account of the increased rate, saying that he could get the insurance cheaper in the Woodmen of the World; that this insurance policy was offered to the said Sloan one or two days before Christmas in the year 1921."

The statement of Dr. Lehmberg's testimony as set forth in the bill of exceptions is supported by the affidavit of himself and of the appellant's attorney. The appellee denies that Dr. Lehmberg's testimony was as set forth in the bill of exceptions, and has filed in this court affidavits to the effect that Dr. Lehmberg testified that he did not inform Sloan that he was suffering from hardening of the arteries but did tell him that he had high blood pressure.

Under section 796, Code of 1906 (section 580, Hemingway's Code), it becomes the duty of this court to determine what the evidence on which the cause was tried in the court below was.

The affiants all heard Dr. Lehmberg's testimony when it was delivered, and, in so far as appears from the record, are equally credible, and, were it not for the aid derived from an examination of the court's instructions to the jury to which it is proper to look in this connection, we would have to hold that the appellant, on whom rests

the burden of proof, has failed to establish the correctness of its bill of exceptions.

At the request of the appellee the court below instructed the jury:

"That, even if you do believe from the evidence that Henry C. Sloan had consulted or been attended by Dr. Lehmberg during the five years before the date of the application, yet if you also believe from the evidence that when Henry C. Sloan answered the question whether he had consulted or been attended by a physician for any disease or injury during the past five years, and he answered 'No,' that he then did not know there was anything the matter with him except high blood pressure, then his answering 'No' to the question would not vitiate the insurance policy sued on here, unless high blood pressure was a disease."

At the request of the appellant the court instructed the jury:

"That, if you believe from the evidence that Mr. Sloan was suffering from *arterio-sclerosis* during the year 1921, with *arterio-sclerosis* or hardening of the arteries during the year 1921, prior to the 13th of December, then they must find for the defendant, if it was a disease calculated to shorten or endanger life."

The words, "if it was a disease calculated to shorten or endanger life," were added to the instruction by the court, because of which appellee declined to use it.

The only witness who testified that Sloan consulted Dr. Lehmberg, and for what, was Dr. Lehmberg himself. It is clear, therefore, from these two instructions that the court below tried the case on the theory that Dr. Lehmberg had so testified as to at least warrant the jury in believing that he told Sloan he was suffering from hardening of the arteries. Consequently we must resolve the conflict in the affidavits as to what Dr. Lehmberg's testimony was in the appellant's favor and hold that he told Sloan when treating him that he was suffering with hardening of the arteries.

136 Miss.—36.

Hardening of the arteries is so well known to be a disease and not a mere temporary ailment that judicial notice of that fact may be taken, so that, in stating that he had not consulted or been attended by a physician for any disease, Sloan breached his warranty of the truth of his answers hereinbefore set forth, and consequently the policy issued to him may be avoided at the appellant's option. It is unnecessary for us to pass on the appellant's contention that the disease contemplated in the question propounded to Sloan is one that is material to the risk which the appellant assumed by issuing the policy on Sloan's life, for the reason that, assuming for the sake of the argument that there is merit in this contention, hardening of the arteries is well known to have a tendency to shorten life, and such a disease is undoubtedly material to the risk. Leaving out of view the refusal by the court below of the appellant's request for a peremptory instruction, the modification of the appellant's instruction hereinbefore set forth by the addition thereto of the words, "if it was a disease calculated to shorten or endanger life," was erroneous, for which this judgment must be reversed.

One of the appellee's contentions is that the appellant failed to return or tender to her in the court below the amount of the assessments on the policy paid by Sloan, and, consequently, must be held to have waived the breach of the warranty here in question. It is true that no such return or tender was made, but, conceding there would have been merit therein, no objection thereto was made in the court below, and cannot be made in the supreme court for the first time. Had such objection been made in the court below, the appellee could have avoided its effect by returning or tendering the assessment.

*Reversed and remanded.*