NEW YORK LIFE INS. CO. *v.* BURRIS.

(Division A. Jan. 6, 1936. Suggestion of Error Overruled Mar. 2,
1936.)

[165 So. 116. No. 31880.]

Watkins & Eager, of Jackson, for appellant.

**C. T. Gordon**, of Liberty, and **F. D. Hewitt**, of McComb, for appellee.

662

Argued orally by **W. H. Watkins, Jr.**, for appellant, and by **F. D. Hewitt**, for appellee.

**Cook, J.**, delivered the opinion of the court.

Appellee instituted this suit in the circuit court of Amite county on a policy of insurance for one thousand dollars on the life of Willie E. Burris, issued on July 14, 1931, effective as of the 17th day of June, 1931, and payable to the appellee as beneficiary. The policy was issued in consideration of the application therefor, and the payment of an annual premium of ninety-six dollars and five cents, but on July 5, 1932, on the application of the insured therefor, the mode of payment of premiums was changed to a quarter annual basis. The insured died on October 13, 1934, and after proofs of death were filed showing that insured's death resulted from carcinoma

of the duodenum, the company denied liability, and this suit was filed, resulting in a verdict in favor of appellee, from which this appeal was prosecuted.

To the declaration the appellant filed a plea of the general issue and also a special plea setting up various provisions of the policy and other defensive matter hereinafter to be stated. In addition to other provisions hereinafter referred to, the policy provided that ''the payment of the premium shall not maintain the policy in force beyond the date when the next payment becomes due, except as to the benefits provided for herein after default in premium payment,'' and for the payment of premiums a period of grace was provided in the following language: ''If any premium is not paid on or before the day it falls due the policyholder is in default; but a grace of thirty-one days will be allowed for the payment of every premium after the first, during which time the insurance continues in force. If death occurs within the period of grace the overdue premium will be deducted from the amount payable hereunder.''

The special plea alleged that a quarter annual premium became due on June 17, 1934, and was not paid at that time nor within thirty-one days thereafter, but that the policy provided for reinstatement after default in the following language: ''This policy may be reinstated at any time within five years after my default, upon presentation at the Home Office of evidence of insurability satisfactory to the Company and payment of overdue premiums with six per cent interest thereon from their due date. Any indebtedness to the Company at date of default must be paid or reinstated with interest thereon in accordance with the loan provisions of the Policy.''

The special plea further alleged that on August 31, 1934, the insured made written application to the appellant for reinstatement of the policy, and thereafter presented evidence of insurability satisfactory to the company and made payment of overdue premiums with in-

terest, and reinstated all indebtedness due the company in accordance with the loan provisions of the policy; that in his application for reinstatement the insured was asked the following questions: "Within the past two years have you had any illnesses, diseases, or bodily injuries, or have you consulted or been treated by any physician or physicians?" to which question the insured replied, "Only for a minor cause;" and that the insured was also asked the following question: "Are you now, to the best of your knowledge and belief, in the same condition of health as you were when the policy was issued?" to which the insured answered, "Yes;" and that the said application contained the following warranty: "I hereby certify that the foregoing answers are full, complete and true, and agree that the company, believing them to be true, shall rely and act thereon."

The plea further charged that on September 5, 1934, the appellant wrote to the insured requesting further information in regard to his answer to the question in his application in reference to illnesses, diseases, and bodily injuries or consultation or treatment by a physician within two years prior thereto, and that the insured answered: "In answer to the above I had Dr. J. E. Hewitt of Summit, Mississippi on April 29 for a case of acute indigestion. It only lasted for a short time after a hypo and was out of bed next day;" and that having temporarily misplaced this answer to its letter of September 5th, it again requested additional information in regard to the questions in the application to reinstate, and the insured then answered: "I had Dr. J. E. Hewitt to see me on 30 April for acute indigestion." Appellant further alleged that relying on the warranties contained in this application to reinstate the policy, and the information divulged to appellant in reply to its said letters, it reinstated the policy and readjusted the loan thereon.

The special plea further alleged that the warranties contained in the application to reinstate the policy and

the letters above mentioned were false in that, at the time the said application to reinstate was made, the insured was not, to the best of his knowledge and belief, in the same condition of health that he was when the policy was issued, and for the further reason that the insured had consulted and been treated by a physician or physicians and had suffered illnesses, diseases, or bodily injuries within the two preceding years, and charged the fact to be that at the time the application for reinstatement was made, prior thereto, and at all times thereafter until his death, the insured had suffered from, and had consulted and been treated by physicians for, ulcer of the duodenum; that at the time of the said application the said condition had become malignant, and that such condition did not exist at the time of the original application for the policy sued on. The plea further averred that appellant reinstated the policy relying entirely on the warranties made to it in said application, believing them to be full, complete, and true; that if it had known that the said Willie E. Burris was not in the same condition of health at the time of the application to reinstate as he was when the policy was originally issued, or had known that within two years prior to the date of said application the insured had been treated for duodenal ulcer, the policy would not have been reinstated; that appellant had no information in regard thereto until after the death of the insured, or on or about December 4, 1934, and that immediately upon ascertaining the facts, it elected to and did rescind the application for reinstatement because of the misrepresentations and false warranties, and indorsed the lien note held by it so as to show that it was foreclosed and paid by deducting the amount of said indebtedness and accrued interest from the value of the policy as of the date of the lapse; and, further, that said lien note, together with the full amount in cash received by appellant in connection with said application

for reinstatement, was tendered to the appellee bene- ·
ficiary.

By its special plea appellant further alleged that at the
time of the lapse of the policy on June 17, 1934, the re-
serve value thereof was sufficient to purchase term ex-
tended insurance for nine hundred one dollars for a
period of eight days from the date of the lapse, and that
insured did not die until October 13, 1934, or long after
the expiration of said eight-day period. Among other
exhibits there were attached to this plea copies of the
application to reinstate, and the two letters written to
insured calling for further information, and his replies
thereto.

To this special plea the appellee filed a replication deny-
ing that the policy had ever lapsed for nonpayment of
premium, and alleging that if it had lapsed it was never
forfeited, but if forfeited, that the forfeiture was waived
and the premium accepted in full by the appellant. Ap-
pellee further denied that the insured consulted a phy-
sician prior to the date of the application to reinstate
the policy; denied that insured was suffering from, or
had been treated for, cancer at the time he applied for
reinstatement of the policy; and alleged that the appel-
lant was estopped to rescind the reinstatement for the
reason that it was fully informed of the insured's physical
condition, or had such information as to put it upon in-
quiry at the time of the reinstatement and issuance of re-
ceipts for past due premiums. Appellee further set up
affirmatively the incontestable clause of the policy read-
ing as follows: ''This policy shall be incontestable after
two years from its date of issue except for nonpayment
of premium.''

Appellee testified that the policy lapsed for the non-
payment of the premium due June 17, 1934, but that this
premium was later paid and the policy reinstated. She
further testified that the insured had chronic indigestion
beginning the first of the year 1934 and continuing to his

death; that this disease gradually became more severe and he lost weight during the summer and fall of 1934 and was confined to his bed continuously from September 28th until he died on October 13, 1934. With this testimony the appellee rested, and a motion to exclude the testimony and direct a verdict for the appellant was over- ruled.

The appellant offered the testimony of Dr. L. N. Brock to the effect that the insured consulted him professionally in April, 1934, and that he examined his entire intestinal tract by means of X-ray and fluoroscope, and that while the X-ray did not show anything definite, it was his opinion that the insured was then suffering from an ulcer of the duodenum, and that he advised a daughter of the insured of this opinion, but did not so advise the insured. He further testified that in his opinion a cancerous condition of the pyloric end of the stomach, or the duodenum, which would cause death would require several months to develop. This testimony was objected to on the ground that it was privileged under section 1536, Code of 1930, and was excluded by the court. The appellant then offered all the testimony of Dr. Brock, which was taken in the absence of the jury, except those questions and answers which required the witness to disclose any information in regard to the physical condition of the insured at the time of the examination, and this was likewise excluded.

Appellant next offered as an expert witness Dr. John E. McDill, who had neither known or examined the insured during his lifetime. The testimony of this witness was objected to, and in the absence of the jury he testified that cancer was a slow growth and particularly when located in the gastro-intestinal tract, and in answer to a hypothetical question based upon the facts in evidence, including the proofs of death, he answered that the insured unquestionably had cancer of the pyloric end of the stomach before August, 1934, and probably before

he first consulted a physician in April, 1934, and, further, that it would require several months for an ulcer of the pyloric end of the stomach to develop into a cancerous condition that would cause death. All the testimony of this witness was excluded. In substantiation of its special plea and the documents exhibited therewith, the appellant also introduced the deposition of its vice president. At the conclusion of the evidence the appellant requested only a peremptory instruction, which was refused, and thereupon the cause was submitted to the jury on two instructions granted appellee.

The first and most important question presented by this appeal is whether or not, in view of the incontestable clause of the policy, it is now contestable on account of false warranties in the application for reinstatement of the policy, or, in other words, whether or not the incontestable clause of the policy took fresh effect in so far as the warranties contained in the application for reinstatement are concerned and now permits a contest because of false warranties whereby the reinstatement was secured.

The original policy provided that it should be incontestable after two years from its date of issue, except for nonpayment of premiums. It is admitted that the premium due on June 17, 1934, was not paid when due or within the period of grace allowed for the payment thereof, and, consequently, under the express provision of the policy, that the payment of the premium should not maintain the policy in force beyond the date when the next payment became due, except as to the benefits provided for therein after default in premium payment, the policy lapsed. Thereafter, upon this record, the only benefit reserved to the insured was the right to have the policy reinstated at any time within five years after the default, upon furnishing to the company evidence of insurability satisfactory to it, and the payment of overdue premiums with interest. The insured herein availed of this provision by furnishing evidence of insurability,

with an express warranty of its completeness and truthfulness, which was acceptable to the appellant. There seems to be some conflict in the authorities as to whether the reinstatement of a policy of insurance creates a new contract of insurance, but there seems to be very little dissent from the view that upon the reinstatement of a lapsed policy the incontestable clause takes fresh effect upon reinstatement to the extent of permitting a contest because of fraud in securing the reinstatement.

It is undoubtedly true that upon the reinstatement of a lapsed policy the terms of the old contract become the terms of the revived contract. There is no new contract of insurance issued, but the reinstatement is rather a contract for the continuance in force of the former contract, and as to this contract the authorities are practically uniform that the incontestable clause takes fresh effect. In the case of New York Life Ins. Co. v. Seymour (C. C. A. Sixth Circuit), 45 F. (2d) 47, 49, 73 A. L. R. 1523, wherein the policy had been incontestable for several years, the court said: "We think the fair construction is that the incontestable clause took a fresh effect when the policy again came into force by the reinstatement, and that the right to contest because of fraud in the reinstatement would expire two years after that date. This conclusion cannot rest upon any precise language in the policy; but it is the reasonable inference as to what the parties intended by reinstating a policy containing this clause, and also providing, in effect, that liability should be defeated by showing fraud in the reinstatement application. This is held in Teeter v. United Life Ins. Ass'n, 159 N. Y. 411, 54 N. E. 72, approved in Great Western Life Ins. Co. v. Snavely (C. C. A.), 206 F. 20, 46 L. R. A. (N. S.) 1056; Mutual Life Ins. Co. v. Dreeben (D. C.), 20 F. (2d) 394."

In Columbian National Life Ins. Co. v. Industrial Trust Co., 53 R. I. 334, 166 A. 809, 812, the court said: "We think the incontestability clause, which is inserted for

the benefit of the insured, can properly be held to apply also to the reinstatement contract and to be operative for a period of one year from the date of the reinstatement."

In Teeter v. United Life Ins. Ass'n, 159 N. Y. 411, 54 N. E. 72, 74, the policy had become incontestable before its lapse, but in considering the effect of the incontestable clause upon the reinstatement, the Court of Appeals held that after reinstatement the policy of insurance was restored in full vigor as of that date, and became incontestable two years thereafter, and further said: "And it seems to us, after an examination of the contract, that the defendant had two years after the reinstatement within which to investigate the condition of Teeter's health at the time of the making of the reinstatement certificate, and that after that time the policy became again indisputable."

In Wastun v. Lincoln National Life Ins. Co. (C. C. A. Eighth Circuit), 12 F. (2d) 422, 425, it was held that: "This new agreement [reinstatement] is not the issuance of a policy, but a contract for the continuance in force of a former contract. This construction of the statute not only complies with its literal terms but is necessary for the reasonable protection, both of the policy holder and of the company," while in Northwestern Mutual Life Ins. Co. v. Pickering (C. C. A. Fifth Circuit), 293 F. 496, 497, it was assumed that, "under the terms of the policy it was contestable by the defendant, within one year from the date of the reinstatement, for fraud of the insured in procuring the reinstatement, though at the time of the reinstatement more than a year had elapsed since the issuance of the policy."

In Pacific Mutual Life Ins. Co. v. Galbraith, 115 Tenn. 471, 91 S. W. 204, 206, 112 Am. St. Rep. 862, the Supreme Court of Tennessee held that upon the reinstatement of a lapsed policy there was created a new contract of insurance, though under the former policy, and said: "If

this be its nature, then it must operate in the future from the date of its reinstatement, and whatever might be its original date, or howsoever long it may have run, yet it would seem, by the force of necessary logic, to follow that the incontestable clause would begin its new life with the date of the new contract.''

In Franklin Life Ins. Co. v. Jones, 169 Miss. 91, 152 So. 285, 286, it was held that: ''The policy being incontestable after one year, it was the duty of the insurance company to ascertain within one year whether the statements in the application for reinstatement were true, and to take action if untrue. We think the reinstatement is governed by the same principles as the original application.'' As bearing upon this question, see, also, Great Western Life Ins. Co. v. Snavely (C. C. A.), 206 F. 20, 46 L. R. A. (N. S.) 1056; Alper v. New York Life Ins. Co. (D. C.), 41 F. (2d) 956, and Mutual Life Ins. Co. v. Dreeben (D. C.), 20 F. (2d) 394.

It seems to us that on reason and authority it must be held that the policy here sued on, which had become incontestable before lapse and reinstatement, as to all matters covered in the original application for the policy or contract of insurance will, after revival and reinstatement remain incontestable as to such matters, but as to the contract of reinstatement, the incontestable clause takes effect anew upon reinstatement and for the period prescribed, thereby permitting a contest because of fraud in securing the reinstatement. Any other view would open the door to the grossest deceit and fraud in securing the reinstatement of a policy that had become incontestable under its original provisions. The contrary view would permit the holder of a lapsed policy, wherein the original contestable period had expired, who was facing impending death from a known fatal malady, to secure reinstatement by false and fraudulent representations of his continued good health and insurability, and then rest

securely behind the protection of the original incontestable clause.

The argument of appellee in support of the exclusion of the testimony of Drs. Brock and McDill seems to be based upon the theory, first, that the testimony of these physicians was privileged under the provisions of section 1536, Code of 1930, notwithstanding the waiver of the privilege of this statute in the insured's application for the policy, and, second, that this testimony was inadmissible for the reason that more than two years had expired since the execution of the waiver and the issuance of the policy, and therefore the policy was then incontestable for any cause.

As part of the consideration upon which the policy sued on was issued, it contained the following waiver: "I expressly waive, on behalf of myself and of any person who shall have or claim any interest in any policy issued hereunder, all provisions of law forbidding any physician or other person who has heretofore attended or examined me, or who may hereafter attend or examine me, from disclosing any knowledge or information which he thereby acquired."

In view of this waiver, the statute itself did not render the testimony of these physicians incompetent. It has been held by this court that the privilege created by section 1536, Code of 1930, is personal to the patient and may be waived by him, and that when such waiver is one of the considerations upon which a policy of insurance is issued, the testimony of his physician is competent. In the case of Sovereign Camp, W. O. W., v. Farmer, 116 Miss. 626, 77 So. 655, 656, the court said: "The privilege created by section 3695, Code of 1906 (Hemingway's Code, section 6380 [now section 1536, Code of 1930]), is personal to the physician's patient, and may be waived by him either before or at the trial, and, since one of the considerations upon which this policy was issued was the waiver by Farmer of such privilege, it follows that his

physicians were competent witnesses, although they obtained their knowledge of his condition while treating him professionally.''

Since we have already herein held that in so far as the conditions and warranties contained in the application for reinstatement are concerned a new period of contestability began to run on the date of the reinstatement, neither ground of objection to the competency of the testimony of these physicians was maintainable, and their testimony should have been admitted.

In his application for reinstatement the insured stated, in answer to a question therein, that he was then, to the best of his knowledge and belief, in the same condition of health as he was when the policy was issued. In answer to the further question whether, within the past two years, he had had any illness, disease, or bodily injury, or had consulted or been treated by any physician or physicians, he answered, ''only for a minor cause.'' In response to a request for an explanation of the answer last above quoted, and calling for full details, including nature, date, and duration of every illness, disease, or injury, which he had suffered, and the names of attending physicians, if any, the date of consultation, he disclosed treatment by Dr. Hewitt for an attack of acute indigestion of short duration, but did not disclose the fact that he had consulted and been examined by Dr. Brock, who made a general X-ray and fluoroscope examination of his entire intestinal tract. The answers to these questions were undoubtedly material. In view of the testimony of the insured's wife, appellee herein, that the insured suffered from chronic indigestion from the first of the year 1934 until his death in October, 1934, which, during that period, gradually became more severe, resulting in loss of weight, it is hardly conceivable that he believed at the time he applied for reinstatement of the policy that he was in the same state of health that he was when it was issued in 1931. But, in any event, his

failure to disclose that he had consulted a physician and been subjected to a general X-ray examination of his entire intestinal tract was a concealment of a fact material to the risk.

If the insured, in answer to these questions, had disclosed that he was suffering from chronic indigestion and had consulted Dr. Brock and had undergone a general X-ray examination of the entire intestinal tract, in all probability the company would not have reinstated the policy without making further investigation to determine the results of this examination. An autopsy, the results of which are reflected by the proofs of death, showed that the insured died of cancer of the stomach. The uncontroverted proof is that cancer does not originate and develop to the extent of producing death within the short time that intervened between the date of the application to reinstate the policy and the death of the insured, and if the details of Dr. Brock's examination of the insured had been disclosed, as called for by the inquiry, an investigation would have disclosed that, in the opinion of this physician, the insured was suffering from an ulcer of the duodenum some months before the application to reinstate was made, which, of itself, if it did not suggest danger of cancer, would have shown a change of condition of health materially affecting insurability. It is probably true that the insured did not fully appreciate the seriousness of his condition and the materiality of the answers, but that fact is not determinative of the question. The insured agreed in his application that the company might rely and act on his answers as being full, complete, and true, and the company had the right to the full and complete disclosures called for in order that it might pursue such inquiry as was suggested by the answers and determine for itself whether or not the risk had been impaired since it first issued the policy.

In Claflin v. Commonwealth Ins. Co., 110 U. S. 81, 3 S. Ct. 507, 515, 28 L. Ed. 76, the Supreme Court of the United

States said: "A false answer as to any matter of fact material to the inquiry, knowingly and willfully made, with intent to deceive the insurer, would be fraudulent. If it accomplished its result, it would be a fraud effected; if it failed it would be a fraud attempted. And if the matter were material and the statement false, to the knowledge of the party making it, and willfully made, the intention to deceive the insurer would be necessarily implied, for the law presumes every man to intend the natural consequences of his acts."

In Travelers' Ins. Co. v. Pomerantz, 246 N. Y. 63, 158 N. E. 21, 22, the court held that: "The insurer has the right to an opportunity to know whether the attention was for an ailment inconsiderable or serious. Although no disease may have developed, symptoms which had required medical attention might indicate conditions from which disease might be generated. Depending upon the nature of the attention, whether trivial or substantial, an applicant might prove to be a poor risk or a sound one. The insurer indicated by statement 12 that it wanted to know the facts and that it intended and expected the applicant to speak the truth so that it might acquire information concerning them. Any misrepresentation which defeats or seriously interferes with the exercise of such a right cannot truly be said to be an immaterial one." See, also, New York Life Ins. Co. v. Wertheimer (D. C.), 272 F. 730; Lee v. N. Y. Life Ins. Co., 144 La. 445, 80 So. 652; Mutual Life Ins. Co. v. Hurni Packing Co. (C. C. A.), 260 F. 641, certiorari denied 251 U. S. 556, 40 S. Ct. 178, 64 L. Ed. 412; Ætna Life Ins. Co. v. Perron (C. C. A. Seventh Circuit), 69 F. (2d) 401; Tutewiler v. Guardian Life Ins. Co. (C. C. A. Fifth Circuit), 42 F. (2d) 208, 209, and Demirjian v. New York Life Ins. Co., 205 Wis. 71, 236 N. W. 566.

In the cases of Williams v. New York Life Ins. Co., 132 Miss. 345, 96 So. 97, and Sovereign Camp, W. O. W., v. Sloan, 136 Miss. 549, 101 So. 195, it was held that where

an applicant for life insurance warrants the truth of the statements, representations, and answers made in his application, a failure to disclose a consultation and treatment by a physician within the period set forth in question calling for this information will avoid the policy at the option of the insurer.

We conclude, therefore, that the peremptory instruction requested by the appellant should have been granted, and, consequently, the judgment of the court below will be reversed, and judgment entered here for the appellant.

Reversed, and judgment for appellant.