This is a suit by an insurance company seeking the cancellation of an insurance policy for $1000 which it had issued on the life of Lonnie L. Vaughan and in which the insured's wife and child were made beneficiaries.
The demand for cancellation is based on the ground that in an application for reinstatement of the policy, after it had lapsed for non-payment of premiums due, the assured had made certain false statements and representations and because of the *Page 491 
fraud perpetrated on the insurance company it has the right to have the policy voided.
In defense, the widow for herself and for her child, denied that the assured had made any false statements as alleged by the plaintiff and that the statements complained of were not fraudulent misrepresentations which would give the insurance company the right to cancel. She reconvened and asked for judgment for the full face value of the policy.
[1] The policy had been taken out by the assured when he was domiciled in the State of Mississippi, where he had always resided. It was therefore a Mississippi contract. He died in the State of Tennessee but was still a resident of Mississippi where his widow and his child, the beneficiaries under the policy, were also living, although his wife was separated from him. After his death his widow moved to Louisiana and became a resident of the Parish of East Baton Rouge and that is why the suit was instituted against her in the District Court of that Parish. It is agreed by all parties however that the contract of insurance as well as the rights of the parties thereunder are governed by the laws of the State of Mississippi and upon the application of the laws of that State depends the recovery of whatever right either may have in this litigation.
The trial judge after hearing the case, without assigning written reasons, rendered judgment in favor of the defendant, rejecting the plaintiff's demand and then awarded judgment again in favor of the plaintiff on her reconventional demand for the amount prayed for. From that judgment the plaintiff insurance company has taken this appeal.
The policy of insurance had been in existence for a year or more when a regular quarterly premium became due on December 14, 1940. The assured permitted the 31 day period of grace to expire and therefore the policy lapsed for non-payment of that premium. His wife who, as already stated, was separated from him at that time, and who evidently was interested in seeing that the policy was kept in force, called at the office of the insurance company after being advised that the policy had lapsed and she was there told that the assured himself would have to go to the office and sign an application for reinstatement if it was to be maintained in force. She states that at that time she paid the premium that was due and it was accepted by the representative of the insurance company. Nine days after the period of grace had expired her husband went to the same office, where she accompanied him and there, in the presence of a lady employee of the company, the same she had paid the premium to, the application for reinstatement was signed. There is some dispute as to exactly what took place right then but this we will discuss later.
In the application for reinstatement, which is on a printed form, there are statements relating to the assured's state of health, whether it had been good since his original application and also whether he had been treated by a physician during that time. The information is elicited by stating what exceptions there were, and as it appears in the application, that there were no exceptions, it is upon these alleged representations that the insurance company now seeks to avoid the policy because, it contends that, as a matter of fact the assured had not been in good health and he had consulted a physician and had been told that he was suffering from a duodenal ulcer which the insurance company maintains was a serious illness and one which he should have disclosed in his application for reinstatement and that if he had, the reinstatement would not have been effected.
There does not seem to be any dispute concerning what the law of Mississippi is as developed in the jurisprudence of that State on the question at issue in this case. The law was thoroughly expounded by Mr. W. Calvin Wells, a prominent attorney of Jackson, Mississippi. From his testimony it readily appears that there is no statutory law on the subject in the State of Mississippi such as we have in the State of Louisiana, the law there being entirely evolved by the jurisprudence of that State. It is rather simple as we understand it and is to the effect that representations made by an assured in an application for reinstatement of the policy held by him have the same effect as representations *Page 492 
made in the original application for the insurance and further under certain conditions, that if he makes any statements regarding the condition of his health or of having consulted a physician which are not true, these are not warranties but merely representations, and there is an important difference between the two.
Mr. Wells states the law to be that a statement regarding a condition of health or consultation of a physician in an application for reinstatement which is not true has the effect of vitiating the policy if the condition of health found to exist and the disease or condition for which a physician has been consulted is one of a serious nature. The same result would not obtain if the condition is one which may be said to be trivial. When asked the direct question whether the failure to disclose a condition of a duodenal ulcer of which the assured had been advised by a physician would have the effect of vitiating the policy, Mr. Wells answered that it would. He does not qualify that statement in any manner and if we accept it at its face value naturally he has decided the case in favor of the plaintiff insurance company according to Mississippi law. We do not believe however that his answer should be accepted in its broad sense as we are firmly of the opinion, considering the testimony in this case, that there may be a serious question whether a duodenal ulcer is a disease of such serious nature as to undermine the health of an individual or rather is one which does not have such detrimental effect on the human body as to make of such individual a person of unsound health.
First however we will discuss the testimony relating to the manner in which this application for reinstatement was signed by the assured in this case. His widow testified that after she was notified that the policy had lapsed, she lost no time in going to the office of the insurance company to see what could be done about it. She had been paying the premiums because she was the party interested. She and her husband were separated and her husband, we may well assume, was indifferent about the matter. As already stated she paid the premiums on the day that she first went to the office to a lady by the name of Miss Florence Terry who subsequently married and is now Mrs. Donaldson. The amount was something over $7 which Mrs. Donaldson accepted. She then told Mrs. Vaughan to have her husband come to sign an application for reinstatement. Up to this point her testimony is not contradicted and assuming it to be true it leads to the thought that the insurance company was as eager as was Mrs. Vaughan to have the policy kept in force. A few days later, Mr. Vaughan went to the office, accompanied by her, and she testified that all that took place then was a request on the part of Mrs. Donaldson for him to sign the application which he did. Mrs. Donaldson testified by deposition that she elicited the information given in the answers from Mr. Vaughan himself, that what she put in there were his answers, and that the same were read to him and he fully understood each. That of course raises a question of veracity between them but it strikes us that Mrs. Vaughan who was the person directly interested in having this policy reinstated would be in a better position to recall what transpired than Mrs. Donaldson, the agent of the insurance company, who no doubt handles numbers of matters relating to policies of different policy holders each day. Besides, if we accept that part of Mrs. Vaughan's testimony to the effect that she had gone to the office of the insurance company a few days before to inquire about reinstating the policy and that she then paid the lapsed premium, why should the remainder of her testimony be rejected entirely and that of Mrs. Donaldson accepted instead?
[2] It is contended that the deceased insured, having signed the application for reinstatement, is bound by the statements therein contained, as he is presumed to have read it before signing. Generally speaking it is a correct statement of law that one is presumed to have read a document which he signs and to know the full import of its contents, but where in the case of an insurance contract such as we have before us, the insurance company itself prepares the policy, the forms of application, both original and those for reinstatement, and all *Page 493 
that the insured is asked to do is to sign the document presented to him, we do not think that he is bound in the same manner as in other contracts. At least under such circumstances liability cannot be avoided by the insurance company solely on the ground that his answers are untrue. That seems to be the law of the State of Mississippi as indicated in the case of Fidelity Casualty Co. of New York v. Cross, 131 Miss. 632, 95 So. 631.
[3] We do not believe this to be the controlling point in the case, however, as we think the decision depends more on whether the statements contained in the application for reinstatement, assuming that they were made by Mr. Vaughan, were representations rather than warranties. According to the deposition of Mr. Wells, under the law of Mississippi, if a policy of life insurance contains the entire contract and the statements made by the assured, in the absence of fraud, are deemed to be representations and not warranties, likewise, statements made by him in answer to questions relative to his health and medical attention in an application for reinstatement of the policy are considered representations and not warranties. The difference between the two is well stated in the case of Citizens' National Life Insurance Co. v. Swords,109 Miss. 635, 68 So. 920, as follows: "A warranty must be literally true and the materiality cannot be the subject of inquiry. A representation needs only to be substantially true, and if it is not material to the risk, in the absence of fraud, its falsity will not invalidate the policy."
The policy in this case provides that it contains the entire contract between the parties and in order to determine whether statements made by the insured in the application for reinstatement, in answer to questions concerning his health and medical attention were representations rather than warranties, we have to view them in the light of all the testimony relating to them.
The assured, Lonnie L. Vaughan, had obtained a policy of insurance from this same insurance company some years previous to the one he obtained on December 14, 1937, and which is under contest in this suit. The former policy had lapsed for non-payment of premiums on October 27, 1931. As he was issued the other policy in December, 1937, without any question, apparently, it would seem that the insurance company considered him a good risk. The premiums on the second policy were paid in due time until the one that became due on December 14, 1940.
Some time in the latter part of 1939, according to his wife, the assured had an emotional disturbance of some sort. She says that he did not want to go to a doctor but that she took him to consult Dr. Henry G. Rudner, in Memphis, Tennessee, who, from the testimony appears to be a physician of some prominence in that city. Dr. Rudner's records show that it was on December 18, 1940 that he first examined the insured. He gave him a complete physical examination and his diagnosis was a chronic duodenal ulcer, not acute. He verified his diagnosis by X-ray which showed a deformity of the cap of the duodenum. This deformity, he states, meant a scar resulting from an ulcer. Ulcers of this kind, he adds, are very common and they do not play a major part in the general health or soundness of the human system. It is so common that it is found in patients of sound health. Dr. Rudner operates a clinic and he states that after their physical examination of Mr. Vaughan, they made a stomach analysis, including complete blood studies and allergy studies and came to the conclusion that he had this chronic ulcer and was allergic to certain foods. He further states that with proper diet and the usual medication, he responded to treatment. A careful reading of this doctor's deposition, and it should be stated here that he was introduced as one of plaintiff's witnesses, leaves us with the definite impression that he does not consider a condition such as he found the assured in to be one of a serious nature and in fact he makes that positive statement in answer to a cross-interrogatory.
Several other doctors were produced as witnesses by the plaintiff to express their opinion as to the seriousness, vel non, of a duodenal ulcer and whilst some of them said that they considered it a serious ailment, *Page 494 
others did not think so, notably among these being Dr. T.C. Oliver who also testified by deposition and in answer to a cross-interrogatory, stated, "it is not incurable, I do not consider it of a serious nature."
[4] It was more than a year after Dr. Rudner had seen the assured that the application for reinstatement of the policy was made. The doctor says that he responded to the usual treatment and as far as the record shows, he had no further effects from that ailment and lived the life of a normal individual in sound health. The statements contained in the application for reinstatement which he signed on January 24, 1941, concerning the condition of his health and medical attention were substantially true and as he died on November 16, 1941, from a cause wholly disconnected with the condition found by Dr. Rudner in December, 1939, they were certainly not material to the risk. We find nothing in the nature of a wilful or fraudulent intention on the part of Mr. Vaughan to conceal anything from the insurance company when he signed the application for reinstatement. At most it was such a representation as would not invalidate the policy.
In his deposition, Mr. Wells referred repeatedly to the Mississippi case of New York Life Insurance Co. v. Burris,174 Miss. 658, 165 So. 116 as authority for what he stated the law of that State was on the question at issue and we take it that when he answered that the Supreme Court of Mississippi would invalidate a policy if it were shown that the assured had misrepresented to the insurance company that he was in good health when in fact he was suffering with a duodenal ulcer, he relied on the holding in that case. Upon reading the facts of that case however it is shown that the application for reinstatement was made on August 31, 1934, that from his wife's testimony it developed that the assured had suffered from chronic indigestion from the first of that year, that he had been subjected to a general X-ray examination of his entire intestinal tract by a physician, lost weight and gradually got worse and finally died from a cancer of the duodenum on October 13, 1934. On that State of facts we believe that the holding of the court was eminently correct, and it would have considerable weight with us in this case had it been shown that the insured's death had even a remote connection with the ulcer which was found nearly two years before he died. To the contrary however, the doctors are unanimous in their opinion that his death, from myocarditis, had and could have had no possible relation to the ulcer.
We think that the case was properly disposed of by the judgment appealed from and for the reasons herein stated, it stands affirmed.