## SUDLER *v.* LIFE & CAS. INS. CO. OF TENN.

April 5, 1954

No. 39166 59 Adv. S. 59 71 So. 2d 422

*Barnett, Jones & Montgomery, Francis S. Bowling,* Jackson, for appellant.

*Henley, Jones & Woodliff,* Jackson and Hazlehurst; *Thos. II. Malone, III,* Nashville, Tennessee, for appellee.

Hall, J.

Appellant, as the wife of the insured, was named as beneficiary in a policy of life insurance in the amount of $2,000.00 issued by appellee on December 26, 1946, on the life of Abe A. Sudler. Premiums in the amount of $9.16 per month were payable on the 26th day of each month, with a period of thirty days grace being allowed for the payment of each premium after which all rights under the policy were forfeited if default should be made in the payment of any monthly premium. The premium which became due April 26, 1950, was not paid within the grace period thereafter, and the policy therefore became ineffective from and after May 26, 1950. On June 3, 1950, Mr. Sudler executed a written application for reinstatement of the policy and paid the premiums for two months. Shortly thereafter the Company reinstated the policy and issued to Mr. Sudler its official receipt for the two months premiums. On November 23, 1950, Mr. Sudler died suddenly, apparently of a heart attack, while attending a football game. Appellee denied liability under the policy and appellant brought suit to recover thereon.

Appellee pleaded as a special affirmative defense that Mr. Sudler executed the written application for reinstatement of the policy, annexing a copy thereof as an exhibit to the answer. These questions and answers, among others, appear thereon: "Are you now in sound health? Yes. Have you since date of issue of above policy (a) Had any illness or injury? If yes, give date and particulars. No. (b) Consulted any physician or physicians? If yes, give date, the name and address of physician or

physicians, and state for what illness or ailment. No."
The application further contains this statement: "I
hereby certify that the foregoing statements and an-
swers are correct and wholly true and have been made
by me to induce the Life and Casualty Insurance Com-
pany to reinstate the above policy on my life, which policy
lapsed for the nonpayment of the premium due as stated
above; and I agree that if said Company shall grant such
reinstatement, the same shall be deemed to be based ex-
clusively upon the representations contained in this re-
quest and upon the express condition that if the fore-
going statements be in any respect untrue said Company
shall, for a period of two years from the date of such
reinstatement, be under no liability by reason of the at-
tempted reinstatement of the policy, except that the Com-
pany shall return to the insured or his personal repre-
sentative all premiums paid since the date of said rein-
statement." It was further pleaded in great detail that
the answers above quoted were untrue; that the insured
had been under the care of physicians and heart special-
ists at the Veterans Administration Hospital in Jackson,
Mississippi, and also under the care of Dr. A. Gayden
Ward of Jackson, Mississippi, with repeated diagnoses
of heart disease from January, 1947, to the date of death;
that the misrepresentations in the application for rein-
statement misled the Company and that it would not
have reinstated the policy if it had been advised of the
condition of the insured's health; wherefore it was
claimed that the attempted reinstatement of the policy
was null and void.

Upon conclusion of the evidence for both parties the
lower court granted a peremptory instruction to appel-
lee and from the judgment entered thereon denying re-
covery Mrs. Sudler appeals.

 It is contended that there was an issue of fact for
determination by a jury on the question whether the in-
sured gave correct answers to the Company's agent who
completed the application for reinstatement of the policy

and whether the agent, after being advised of the true condition of insured's health, wrote incorrect answers to the questions above quoted. Reliance is placed by appellant upon the principle well recognized in our decisions that if the agent of an insurance company undertakes the preparation of an application for insurance in his company, and, by mistake or omission, fails to write down correctly the applicant's answer to a question propounded, the company will be bound by such answer just as if it had been written down in the language used by the applicant and presented thus to the company for its action. Home Insurance Company of New York v. Thornhill, 165 Miss. 787, 144 So. 861. **(Hn 2)** The trouble with appellant's argument here is that she failed to bring her case within the stated principle. She was the only witness offered in her own behalf. She stated that H. S. Sims, a soliciting agent of appellee, came to her home on June 3, 1950, and that he and she and Mr. Sudler sat on the porch and talked; that Sims stated that he understood that Mr. Sudler wanted to reinstate his policy that had lapsed and that he had with him an application for reinstatement; she said that Sims asked Sudler only one question and that was when was he in the Veterans Hospital the last time and that Mr. Sudler looked at her and that she stated that to her best recollection it was in February, 1949. She said that Sims handed the application over to Sudler for his signature in her presence. However, during Sims' visit she went back in the house to get a checkbook for the purpose of writing a check to pay the premiums necessary for reinstatement. The application did not in fact contain any question whatever about hospitalization, but it did contain the questions which we have above quoted as to whether he was in sound health, and whether he had had any illness or injury or consulted any physician or physicians since the date of the policy. On the crucial point as to whether there was a full disclosure of the condition of Mr. Sudler's health and of his having

been attended by physicians, Mrs. Sudler wholly failed to testify to facts sufficient to make an issue for a jury. Her testimony is as follows in this respect:

"Q. You cannot deny to the court and jury on oath that Mr. Sims did ask that question?

"A. No, I can't deny that. I did not hear it, that is all I say.

"Q. Then you cannot deny that he asked him the question about being attended by a physician?

"A. No, I did not hear the question. He could have asked it, but I did not hear it.

"Q. Also, he could have asked him some other information with reference to his being attended by a doctor, and you might not have heard it while you were gone from the porch?

"A. He could have.

"Q. You don't know actually what Mr. Sudler told Mr. Sims during that period of time while you were gone, do you?

"A. I don't know that, either.

"Q. So far as you can testify to by your definite, own knowledge, Mr. Sudler may have told Mr. Sims all of these things that are on this statement, isn't that correct?

"A. He could have, in my absence, yes, but not in my presence."

Mr. Sims testified positively that he asked Mr. Sudler every question appearing on the application for reinstatement and that Mr. Sudler gave the answers exactly as they appear on the application. He further testified that Sudler gave no information as to the condition of his health except as shown in the application and did not tell him anything about having been treated by Dr. Ward and by the doctors with the Veterans Administration, and that he knew nothing about Mr. Sudler having heart disease. In her testimony Mrs. Sudler freely admitted that Mr. Sudler had been suffering with heart disease for a long time prior to execution of the application for

reinstatement, that he had been examined by Dr. A. Gayden Ward of Jackson, Mississippi, in her presence for heart trouble and found to be suffering with it, and that he had on several occasions been a patient in the Veterans Hospital at Jackson for treatment for his heart trouble. In the original application for the policy in question there was a waiver of the privileged communication statute, and Dr. Ward testified that he had examined and attended Mr. Sudler for heart disease on at least three occasions in 1947 and found him in very serious condition.

Summarizing, it is not disputed that Mr. Sudler had a serious heart disease when he executed the application for reinstatement and he did not disclose this in the application. It is not disputed, and is, in fact, admitted that he had been attended by physicians between the date of the policy and the date of the application for its reinstatement, and the evidence shows without dispute that he failed to disclose this information in the application for reinstatement. Under the terms of this application the only liability of the Company was for the return of the premiums paid then and thereafter, and these premiums were tendered to appellant in the Company's answer. Under the facts shown, we do not think there was any issue for submission to a jury and that the learned trial judge properly granted the peremptory instruction to appellee. New York Life Insurance Company v. Burris, 174 Miss. 658, 165 So. 116.

In view of this conclusion the other questions raised by appellant are out of the picture and it is unnecessary to pass upon them.

Affirmed.

*Roberds, P. J.*, and *Lee, Kyle* and *Holmes, JJ.*, concur.