**UNITED STATES of America,
Plaintiff,**

v.

**Nathaniel BURDETTE, Defendant.**

**Cr. No. 34305.**

United States District Court
E. D. Michigan, S. D.

April 12, 1957.

---

18.   2 Cir., 1953, 206 F.2d 350, certiorari denied 346 U.S. 924, 74 S.Ct. 310, 98 L.Ed. 417.

Fred W. Kaess and George E. Woods, Detroit, Mich., for United States.

Allan Dwyer Chisholm, Detroit, Mich., for defendant.

THORNTON, District Judge.

A motion to vacate, set aside sentence and judgment and grant a new trial with a sanity hearing, together with a motion for physical and mental examination by two psychiatrists under Rule 35, Federal Rules of Civil Procedure, 28 U.S.C. heretofore submitted by the above-named defendant, came on to be heard in conjunction with a memorandum brief submitted by the said defendant.

The plaintiff has submitted the affidavit of Mr. Willis F. Ward who, at the time of the trial of the above entitled cause, was the Assistant United States Attorney.

The motion to vacate and set aside the sentence and judgment and grant a new trial with a sanity hearing alleges in part as follows:

"Petitioner is confined and restrained by C. H. Looney, Warden, United States Penitentiary at Leavenworth, Kansas, under a judgment and commitment dated and filed on January 27, 1955, adjudged and ordered by Honorable Thomas P. Thornton, a Judge of the United States District Court for the Eastern District of Michigan, Southern Division. In criminal case No. 34305, of said division and court, said judgment and commitment was adjudged and rendered after Petitioner was found guilty by a jury trial on November 30, 1954, as charged to-wit: Bank Robbery and placing a life in jeopardy, in violation of Section 2113 (b) and 2113(d), title 18 U.S.C., in two counts.

"The Petitioner was committed to the custody of the Attorney General of the United States or his authorized representatives for imprisonment in an institution designated by the Attorney General for twenty (20) years on count two of the indictment.

"Contentions of movers and allegations therein:

"The question in this seems to be pretty well resolved around one main point with allegations. The allegations for the sake of clarity are stated repeatedly.

"Allegations: No. 1

"The Petitioner was insane and non compos mentis of sane mind and could not conduct an intelligent defense, due to him being mentally irresponsible. The Petitioner was arraigned and entered a plea of not guilty and the case went to the jury wherein the Petitioner was found guilty on both counts, while the Petitioner was permanently insane and incompetent and couldn't understand between right and wrong.

"No. 2

"The Petitioner was given a 4F classification by his draft board in 1944 due to his mental condition. This is the principal reason why the Court ignored Petitioner's request for a sanity hearing prior to sentencing.

"No. 3

"In the Petitioner's case the Government was in doubt as to accuse mental responsibility for the crime. Had the Court been blind and suffering from defective hearing, their action in behalf of Petitioner would have appeared more justifiable. The fact was first known by the Honorable Court when Petitioner began to suffer from hallucinations and delusions of persecutions and jumped out a four-story high window and broke his back and leg. The Petitioner brought to the Court's attention the fact that he felt he was mentally ill on January 27, 1955, prior to being sentenced. 'See transcript of sentence' Petitioner stated as follows: 'It is quite evident, Judge, that the time when I robbed this bank and all that I did not have all my mental faculties, along with the fact that I had * * * I was laboring under quite a bit of domestic trouble at home. Of course the Court isn't responsible for that, but after all, all that—a man in his right mind isn't going to jump out of a four story window. The Honorable Court ignored the Petitioner's pleading and refused to stop the proceeding of trial and cause Petitioner to be examined to his mental condition but proceeded to sentence Petitioner to prison knowing Petitioner was aware of his illness. The Honorable Court set aside the due process clause, denied Petitioner a fair trial. The Court was prejudiced due to the fact that Petitioner was a negro.

"No. 4.

"The Honorable Court was in error when it did not have the Petitioner examined under provisions of public law 285 Section 4244, Title 18 U.S.C.A. prior to trial and sentence. The United States Attorney can't contend he didn't have a reasonable cause to believe that Petitioner was presently insane or otherwise so mentally incompetent as to be able to understand the proceedings against him or properly assist in his own de-

fense. If the Honorable Court was not aware that Petitioner was mentally ill, had hallucinations and delusions and heard voices telling him to jump out of a four story window. 'Then the United States Attorney should cause a motion to be filed complying with section 4244, Title 18 U.S.C.A.'

"No. 5

"The Petitioner is now permanently insane and his prognosis is considered 'guarded' and there is no dispute as to the fact that it will continue so long as the Petitioner shall live. The Petitioner is in bad need of psychiatrist treatment and there are no means of any such treatment in the United States Penitentiary. The Court failed to comply with section 4244, Title 18 U.S.C.A.; now it is the Court's duty to comply with Rule 35, Rules of Civil Procedure and appoint two outstanding psychiatrists to examine Petitioner and give testimony to Petitioner's hearing of this motion."

In relation to the petitioner's claim that he was insane at the time of his arraignment, the transcript of said arraignment which took place on May 17, 1954, indicates, in part, the following:

"The Court: Now there is a grand jury indictment against you which charges you that you on May 14, 1954, at New Boston, in this judicial district, did unlawfully and wilfully take and carry away, with intent to steal, $2,958.16 from the possession and control of the People's State Bank of New Boston, Michigan, the accounts of which were insured by the Federal Deposits Insurance Corporation.

"The second count charges you that while committing the offense stated you did put in jeopardy the life of Betty Litogot by the use of a dangerous weapon, a .38 caliber revolver, all in violation of the law.

"I believe the Court stated to you this morning, and the Court will repeat to you now that you need not say anything to anybody unless you wish to do so, and anything you say may be used against you.

"You have the right to have a lawyer of your own choosing, for whose services you will pay, or, if you have no funds with which to pay a lawyer, and if you want a lawyer to represent you, then, at your request, the Court will appoint a lawyer to represent you in these proceedings without any expense to you.

"Do you want to get a lawyer?

"Defendant: Well, for one reason, sir. I would like to talk with a lawyer. That is, to clear up a few of the matters in an advisory capacity."

■ From the foregoing, there is certainly nothing to indicate that Burdette was an insane person, rather he gave every indication of being a person who knew about the charges that were pending against him, and had certain matters pertaining to these charges upon which he wanted advice from an attorney.

As to paragraph No. 2 of his motion, the Court had absolutely no information of a 4F classification given Burdette by his draft board in 1944, since the Probation Report which was in the hands of the Court prior to the time of sentence lists the following:

"*Military Service:*

None."

■ As to the Court ignoring petitioner's request for a sanity hearing prior to sentencing, this claim is completely without merit since there was no request for a sanity hearing made by the petitioner, or his counsel, at the time of sentencing; however, if a sanity commission had been requested at that time it would have been denied, since the aforementioned Probation Report, under the heading "Mental & Emotional" reveals the following:

"Psychometric tests administered at Jackson State Prison indicate an I. G. of 92. Psychiatric examination classified the defendant as immature, aggressive, schizoid, emotionally un-

stable, hostile, and assaultive. He seems to have little regard for the rights of others and will go to any length to satisfy his own desires. He was cooperative and truthful when interviewed."

The foregoing conclusions from the psychiatric examination are not to the effect that Burdette was insane.

■ In paragraph No. 3, petitioner's claim that he brought to the Court's attention the fact that he was mentally ill on January 27, 1955, prior to being sentenced, is not a true statement. The quotation from the transcript at the time of the sentence set out in the paragraph is correct. In the everyday affairs of life, it is normal to live up to, and obey the laws of society, both moral and civil, and it is abnormal for a person to violate the law by participating in crime; however, the fact that a person participates in a criminal enterprise, even bank robbery at the point of a gun, does not make him insane. When a person stands before a Court awaiting sentence after a conviction for a crime carrying a penalty of twenty-five years, the fact that he is mentally disturbed on such an occasion is good evidence of his sanity.

The circumstances surrounding the "jump out of a four-story window" episode are as follows:

"On the morning of July 1, 1954 at approximately 7:30 A.M. the defendant while being taken from his cell in the Wayne County Jail to be delivered to the United States Marshal, attacked the guard along with three other inmates and jumped out of the fourth floor window of the Wayne County Jail. His escape attempt was foiled when he broke his left leg in the jump from the fourth floor window. Prosecution on his escape attempt was declined because of the fact that he was presently being tried on two counts of an indictment of the Federal Bank Robbery Statute."

■ The records of this court reflect that the case of United States of America v. Nathaniel Burdette was set for trial at 9:00 A.M. and that the foregoing attempt to escape from the custody of the prison guard clearly evidences the fact that Burdette knew that he was going to court, knew that he was facing serious charges, and was doing everything in his power to escape the consequences of his prior criminal act, and this course of conduct on the part of Burdette negatives his contention that he could not understand the difference between right and wrong.

■ In the same paragraph petitioner makes the following statement: "The Court was prejudiced due to the fact Petitioner was a negro." The fact that Mr. Willis F. Ward, the Assistant United States Attorney representing the Government in the prosecution of Burdette at the time complained of, is also a negro, evokes the curiosity of this Court as to just how the Court was able to distribute this alleged prejudice; this Court also questions the sincerity of the foregoing statement by the petitioner in the face of a communication that was directed to the Court by Burdette on 3/20/55 in the following language:

"Dear Sir:

"I was sentenced on Jan. twenty seventh 1955, to twenty years for bank robbery. However I was apprehended durring the day of the robbery and was remanded in custoday until I was sentenced. It was slightly better than eight months from the time of my apprehension until I received my sentence. Any consideration that you may grant in my case certainly will be highly appreciated by me and my family. Moreover I can truthfully say had I given the situation the second thought it wouldn't have happened.

"While being here I'm going to utilize my time by completing my education. I am also greatful to the court for treating me like a man.

"I am Respectfully

"Nathaniel Burdette"

The foregoing communication also seems to competently establish the fact that

almost four months after the conclusion of his trial Burdette had an excellent recollection of the period of time he was in custody from the time of his apprehension until the date of his sentence, and the type of offense that was the subject matter of his conviction.

In consideration of his present claim of insanity, Burdette's statement to the Probation Department shortly after his conviction is a matter of interest and is as follows:

*"Defendant's Statement:*

"The defendant readily admitted his guilt. He said that he had a chance to open up a filling station and small auto repair shop, but he needed $2,700 capital. Because of marital difficulties he has been having, he knew that his wife would not agree to their obtaining a mortgage on their property and he decided that the easiest way to obtain that amount of money would be to rob a bank.

"On the day of the offense the defendant said that he went to Ann Arbor, Michigan where he stole a station wagon which he used in his get away. After he committed the hold-up, he started back to Ann Arbor where he intended to abandon the car in an effort to throw suspicion on a resident of that vicinity. Before he reached the city limits, however, he was seen driving the stolen car and police authorities gave chase to him. He was finally apprehended in the City of Ann Arbor. He said that the gun used in the holdup was obtained by him during a poker game when he lent some money to an unknown player in return for the gun which was to be redeemed later. He said that the owner of the gun never reclaimed it so he naturally kept it in his possession.

"The defendant said that he had full realization of what he was doing and he planned and executed the crime without the knowledge of any other person."

In weighing the foregoing letter to the Court and the statement to the Probation Department with Burdette's present claim that he was insane at the time of his trial, the Court is forced to question the sincerity of his claim of alleged insanity.

The claim set out in paragraph No. 4 is adequately answered by the affidavit of Mr. Willis F. Ward, attached hereto and marked "Exhibit A".

The allegations contained in paragraph No. 5 of petitioner's motion to vacate will be considered in conjunction with his motion for a physical and mental examination, wherein he is asking for a psychiatric examination by two doctors, under the provisions of Rule 35 of the Federal Rules of Civil Procedure.

Rule 1 of the Federal Rules of Civil Procedure reads as follows:

"Rule 1. Scope of Rules

"These rules govern the procedure in the United States district courts in all suits of a civil nature whether cognizable as cases at law or in equity, with the exceptions stated in Rule 81. They shall be construed to secure the just, speedy, and inexpensive determination of every action. As amended Dec. 29, 1948, effective Oct. 20, 1949."

One reason for promulgating Rule 35 is given as follows:

"Commentaries

" 'This provision (also adopted over vigorous protests) should prove an effective barrier to much malingering and fraudulent testimony (heretofore so difficult to rebut) as to the real physical or mental condition of parties to *civil actions.'* " (Italics supplied.)

From the foregoing, it is obvious that Burdette is entitled to no relief under Rule 35 of the Federal Rules of Civil Procedure.

Since this Court does not know the foundation for the medical conclusion contained in paragraph No. 5 that

"The Petitioner is now permanently insane and his prognosis is considered 'guarded' and there is no dispute as to the fact that it will continue so long as the Petitioner shall live."

the Court suggests to the petitioner that he avail himself of section 4245, U.S.C.A. Title 18, which reads as follows:

"§ 4245. Mental incompetency undisclosed at trial

"Whenever the Director of the Bureau of Prisons shall certify that a person convicted of an offense against the United States has been examined by the board of examiners referred to in title 18, United States Code, section 4241, and that there is probable cause to believe that such person was mentally incompetent at the time of his trial, provided the issue of mental competency was not raised and determined before or during said trial, the Attorney General shall transmit the report of the board of examiners and the certificate of the Director of the Bureau of Prisons to the clerk of the district court wherein the conviction was had. Whereupon the court shall hold a hearing to determine the mental competency of the accused in accordance with the provisions of section 4244 above, and with all the powers therein granted. In such hearing the certificate of the Director of the Bureau of Prisons shall be prima facie evidence of the facts and conclusions certified therein. If the court shall find that the accused was mentally incompetent at the time of his trial, the court shall vacate the judgment of conviction and grant a new trial. Added Sept. 7, 1949, c. 535, § 1, 63 Stat. 686."

■ If the petitioner will submit to an examination of a board of examiners under the provisions of section 4241, U.S. C.A. Title 18, and if as a result of this examination the Director of the Bureau of Prisons certifies to the clerk of this court that the board of examiners have probable cause to believe that Burdette was mentally incompetent at the time of his trial then, and in that event, this Court will conform to the requirements of section 4245, U.S.C.A. Title 18.

In view of the foregoing conclusions reached by the Court, the motion to vacate, set aside sentence and judgment and grant a new trial with a sanity hearing, and the motion for a physical and mental examination by two psychiatrists, under Rule 35 of the Federal Rules of Civil Procedure, are herewith denied, without prejudice.

Exhibit A

United States District Court
Eastern District of Michigan
Southern Division

United States of America,
Plaintiff,

v.

Nathaniel Burdette,
Defendant.

Criminal
No. 34305

Affidavit

County of Wayne
State of Michigan } ss

Willis F. Ward, being duly sworn, deposes and says:

1. That he was an Assistant United States Attorney from on or about July 19, 1953, to on or about June 20, 1956, for the Eastern District of Michigan, Southern Division, at Detroit, Michigan.

2. That he was the Assistant United States Attorney who tried the defendant in November 1954.

3. That on several occasions, both prior to the trial and at the time of sentencing, January 27, 1955, he talked to and observed the defendant on these occasions.

4. That at no time did the defendant's actions or conversation give him any reasonable cause to believe that the

defendant was mentally ill or otherwise mentally incompetent.

5. That deponent further says that the defendant herein was fully aware of the nature of his crime and of the consequences of his acts as borne out by the uncontradicted testimony at the trial.

/s/ Willis F. Ward

Subscribed and sworn to before me this 25th day of March, A. D. 1957.

/s/ Ruth J. Wholihan

Notary Public, Wayne County, Michigan

My commission expires: 12–5–59