REID et al. *v.* MIDDLETON

No. 41835          May 29, 1961          130 So. 2d 554

*Dudley W. Conner,* Hattiesburg, for appellants.

*William H. Stewart, Poplarville,* for appellee.

Jones, J.

Appellee was awarded a judgment for $35,000 for personal injuries alleged to have arisen from an intersection collision of an automobile and a truck in Mississippi City. The case comes here from the Circuit Court of Pearl River County.

The appellee, 64 years old, was driving a Cadillac automobile in a westerly direction on what is known as Township Road. Brown's truck, driven by Reid, was traveling south on Teagarden Road. The testimony as to the collision was conflicting but it is not necessary to detail the facts at this point, except to say that some small amount of damage was done to appellee's Cadillac and there seems to have been no marks of damage done to the milk truck. Both vehicles were driven away from the accident under their own power.

During the trial of the case defendant called Dr. Edward A. Attix, who was sworn and placed on the witness stand. Before any questions were asked of the witness, the jury was retired at the direction of the court, whereupon outside the presence of the jury plaintiff ob-

jected to any testimony from this witness on the ground of physician and patient privilege. The court sustained the objection and would not permit the witness to testify. Defendant requested and was refused the following instruction:

"The court instructs the jury for the defendants that under the law of Mississippi the communications between a physician and his patient are privileged where the relationship of doctor and patient exists, and that the plaintiff has a legal right under the statute to claim that privilege, and object to the doctor giving testimony acquired by virtue of that relationship, however, the court instructs you where the plaintiff has claimed such privilege, then you may reasonably infer therefrom that had the doctor testified that his testimony would be adverse to the interest of the plaintiff."

The refusal of this instruction was error, Killings v. Metropolitan Life Ins. Co., 187 Miss. 265, 192 So. 577.

The defendant was entitled, after the doctor had been sworn and had taken the witness stand, to examine the doctor until the examination reached the point where any objection by the plaintiff was apt and was made. The court then could have ruled upon the objection and if sustained, the doctor could have been excused from the witness stand.

Previously appellant had stood before the jury and exhibited his hands so that they might see, as he alleged, whether there was atrophy of the little finger and other parts of his right hand.

After the court had sustained the objection to the testimony of Dr. Attix, defendant requested that the plaintiff be required to submit to an examination by Dr. Attix as to his physical condition at that time, asserting his right to have such examination made on the ground that plaintiff had exhibited his person to the jury and had therefore waived any right to refuse an examination re-

lating to his alleged injury. The court denied this request. This was prior to noon. It is shown by the record that after the court had refused to permit Dr. Attix to testify and after he had refused to permit Dr. Attix to examine the plaintiff's hand, Dr. Attix left, returning to Hattiesburg some distance from the scene of the trial and that at Hattiesburg for that afternoon he had an operation scheduled.

After noon attorney for plaintiff returned to the courtroom and announced that they were willing to have the examination of the plaintiff's hands made by doctor of the defendant's choice. As stated, Dr. Attix had returned to Hattiesburg and was not then available. Attorney for defendant requested the court to go as far as they could that afternoon and recess until the next morning and that in the meantime he would have an examination made by Dr. Attix and have the doctor present at 9 o'clock the next morning to testify as to this examination. The court refused to recess and the case was completed without an opportunity to have said examination made. We think that the attempted waiver or agreement by plaintiff's attorney was too late. It was made only a short while before the completion of the trial at a time when it was impossible to have such examination made. In this respect we quote from the opinion of Judge Alexander in Clary v. Breyer, et al., 194 Miss. 612, 13 So. 2d 633:

"We therefore emphasize that there is no technical potency in a mere formal offer which of itself operates conclusively to shield plaintiff against adverse inferences or to impose upon the defendant procedural disadvantages. Both the sincerity of the tender and its legal efficacy must remain in direct ratio to the feasibility of compliance."

▆▆ The defendant was entitled to have an examination made of the plaintiff's hand and it was error to refuse such examination. Dixie Greyhound Lines, Inc.

v. Matthews, 177 Miss. 103, 170 So. 686; Teche Lines v.
Bounds, 182 Miss. 638, 179 So. 747.

██ It was shown that the plaintiff was a pharma-
cist and the owner of a drugstore; that he was a highly
emotional man; that since 1952, he had suffered with a
peptic ulcer which was apparently healed six months be-
fore the accident; that he was afflicted with hypertro-
phic arthritis of the spine. His local doctor examined
him the day of the accident and found him suffering with
pain in the right hand and in the lumbar region together
with muscle spasm in the lumbar region. An X-ray
showed a chipped fracture of the articulate facet on the
third lumbar vertebra. At the time of the trial this
fracture had completely healed and the doctor testified
there was no disability or deformity therefrom.

Some days after the accident an X-ray disclosed a
hairline fracture of the fifth metacarpal bone on the
right hand. This fracture had healed but some pressure
had developed on the ulnar nerve which was causing an
atrophy of part of the right hand. The doctor testified
that the source of the nerve pressure which caused the
atrophy could not be determined except by an explora-
tory operation which the plaintiff declined to undergo.
This pressure could come from the arthritic condition.
The doctor said he would not know without the examina-
tion. The doctor also testified that the muscle spasm
could be caused by the arthritis; that the accident could
not have caused the arthritis but probably aggravated
it. The peptic ulcer had become reactivated about a
month after the accident but there was no evidence that
the accident caused such reactivation. On the day of
the accident when the doctor examined him, there was no
evidence of external abrasions, bruises, or cuts.

Because of the plaintiff's nervousness and emotional-
ism, the doctor had advised him to sell his drugstore,
which he had done, but he was able to fish, play golf and
in fact went to the golf course the next day after the

accident and walked around. He had played eighteen holes of golf twice in the last two or three months before the trial. Under these facts we are of the opinion that the verdict of the jury was so excessive as to come within the rule which requires a reversal because of such excessiveness.

For the reasons above stated, this case is reversed and remanded for another trial.

Reversed and remanded.

*McGehee, C. J.,* and *Arrington, Ethridge,* and *Rodgers, JJ.,* concur.