**Elmo HARDY, Plaintiff,**

v.

**George RISER et al., Defendants.**

**No. WC 6925–K.**

United States District Court,
N. D. Mississippi, W. D.

Feb. 9, 1970.

Cliff Easley, Jr., Bruce, Miss., for plaintiff.

Collins Bailey, Batesville, Miss., for defendants.

## MEMORANDUM OPINION ON OBJECTION TO TAKING OF DEPOSITION OF EXAMINING PHYSICIAN

KEADY, Chief Judge.

This is a personal injury action originally brought by Hardy, a Mississippi resident, against Riser and others, residents of Tennessee, in the Circuit Court of Calhoun County, Mississippi. Defendants removed the suit to this court and moved for and obtained a physical examination of plaintiff under Rule 35, F.R.Civ.P.[1] Defendants now seek to

"Rule 35. Physical and Mental Examination of Persons. (a) Order for Examination. In an action in which the mental or physical condition of a party is in controversy, the court in which the action is pending may order him to sub-

take, for use as evidence, the deposition of the examining physician, Dr. Morris Ray, a neurosurgeon of Memphis, Tennessee, to which plaintiff objects on the ground that medical information thus given would be a privileged communication under Miss.Code Ann. § 1697,[2] and, therefore, inadmissible at trial.

It is noted at the outset that plaintiff agreed to the examination only because he knew the court would likely order it if he did not agree.[3] Under these circumstances, it is as if an order for physical examination, under Rule 35, had been entered. Furthermore, even though plaintiff has received a copy of the examining physician's report, it was sent to him by the physician as a matter of course and not at request of plaintiff or his counsel. The delivery of an unrequested medical report does not satisfy the waiver requirement of Rule 35(b) (2), F.R.Civ.P.[4] As was stated in Annotation at 36 A.L.R.2d 951, "The rule certainly does not contemplate that the party causing an examination shall have the arbitrary power to obtain privileged reports of the examined party merely by delivering to him an unrequested report of a medical examination he was compelled by court order to undergo."

Thus, plaintiff did not waive his physician-patient privilege as to his own attending physicians by the unsolicited receipt of a copy of the report of Dr. Ray, the examining physician; and defendants may not depose plaintiff's own attending physicians.

There being no waiver of the physician-patient privilege, the question arises: When a federal district court, in a diversity case, is sitting in a state which has a physician-patient privilege, such as Mississippi, does this privilege apply to a physician appointed by the court to make a physical examination of a party under Rule 35? There is a surprising dearth of law on this precise question, even though much has been written on both Rule 35 and the physician-patient privilege. One reason for this lack of authority in the Fifth Circuit may be that Mississippi is the only state in the Circuit which recognizes the physician-patient privilege in civil cases.[5] This is rather curious since at least two-thirds of the states do recognize it,[6] but even in those states there seems to be little case law exactly in point.

There is no federally-created physician-patient privilege.[7] No such

mit to a physical or mental examination by a physician. The order may be made only on motion for good cause shown and upon notice to the party to be examined and to all other parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made."

2. "§ 1697. Communications privileged. All communications made to a physician or surgeon by a patient under his charge or by one seeking professional advice, are hereby declared to be privileged and such physician or surgeon shall not be required to disclose the same in any legal proceedings except at the instance of the patient or in case of the death of the patient by his personal representative or legal heirs in case there be no personal representative; * * *" (This section supersedes § 7455 of Hemingway's 1927 Code and § 1536 of the Code of 1930).

3. This is the usual procedure, as stated in 2A Barron & Holtzoff, Federal Practice & Procedure, p. 480 (Wright Ed.

1961): "Though a motion and order are required, in practice the examination is usually arranged by stipulation of the attorneys, with the rule standing as a compulsory sanction which helps to produce such stipulations."

4. "(2) By requesting and obtaining a report of the examination so ordered or by taking the deposition of the examiner, the party examined waives any privilege he may have in that action or any other involving the same controversy, regarding the testimony of every other person who has examined or may thereafter examine him in respect of the same mental or physical condition."

5. 8 Wigmore on Evidence 820, Chapter 86, § 2380 (McNaughton Ed.1961); Lipscomb, Privileged Communications Statute—Sword and Shield, 16 Miss.L.J. 181 (1944).

6. 58 Am.Jr. 232, Witnesses, § 401; 97 C.J.S. Witnesses § 293, p. 823.

7. Leszynski v. Russ, 29 F.R.D. 10 (D.C. Md.1961).

privilege existed at common-law,[8] and with one or two rare judicially created exceptions,[9] the privilege is a pure creature of statute.[10] The rule has long been criticized by leading publicists,[11] and has been the subject of heated debate in Mississippi.[12] And while the privilege was recognized by the American Law Institute in its Model Code of Evidence,[13] the recent Proposed Rules of Evidence for Federal District Courts do not recognize it.[14] Potential conflicts between those rules and state-created statutory privileges are foreseeable, but fortunately beyond the scope of the present inquiry.[15]

■ Our threshold question, as in so many diversity cases, is an *Erie* one: Is the privilege substantive or procedural? Federal courts have generally found the privilege to be substantive.[16] The Supreme Court of Mississippi, in pre-*Erie* decisions protecting the privilege, has often regarded the Mississippi physician-patient privilege as evidential, or procedural in character.[17] Thus, it would seem that if the Mississippi interpretation of its own statute were literally followed, there would be no physician-patient privilege whatsoever in federal courts sitting in diversity cases in Mississippi. We seriously doubt, however, that any such startling result was ever intended by the State Supreme Court when it declared the privileged communication statute to be procedural and not substantive. It appears that the prime consideration of those cases was upholding the medical privilege and the constitutionality of the statute providing therefor by declaring that it was evidential only and did not impair any substantive rights.[18] Be that as it may, we shall here adopt the reasoning of most federal tribunals and treat the physician-patient privilege as substantive for *Erie* purposes, requiring the application of state substantive law in diversity cases, as was well said by the Second Circuit in Massachusetts Mutual Life Insurance Co. v. Brei:[19]

---

8. 8 Wigmore 820; 58 Am.Jur. 232.

9. Viz. Cole's Next of Kin v. Anderson Cotton Mills, 191 S.C. 458, 4 S.E.2d 908, cited at 97 C.J.S. Witnesses § 293, p. 824.

10. 8 Wigmore 820.

11. A good cataloging of the many criticisms of the privilege may be found in the scholarly opinion of Judge Edelstein in Lowe's of Roanoke, Inc. v. Jefferson Standard Life Ins. Co., 219 F.Supp. 181 (1963).

12. One writer suggested the Legislature follow Hamlet's advice to the players: "O, reform it altogether!" 16 Miss.L.J. 190.

13. American Law Institute Model Code of Evidence (1942) §§ 220–223, pp. 159–164.

14. Thomas F. Green, Jr., Highlights of the Proposed Federal Rules of Evidence, 4 Ga.L.Rev. 26 (Fall 1969); for text of proposed Rules, see 46 F.R.D. 161 (March 1969). A medical privilege is recognized by the Rules only in the case of psychotherapist-patient communications. 46 F.R.D. at 257.

15. For a discussion of possible conflicts, see: R. E. Degnan, The Law of Federal Evidence Reform, 76 Harv.L.Rev. 299–301 (1962), and T. F. Green, 4 Ga.L. Rev. 1–42, supra.

16. Connecticut Mutual Life Ins. Co. v. Union Trust Co., 112 U.S. 250, 5 S.Ct. 119, 28 L.Ed. 708; Massachusetts Mutual Life Ins. Co. v. Brei, 311 F.2d 463, 100 A.L.R.2d 634 (2 Cir. 1962); Hill v. Huddleston, 263 F.Supp. 108 (D.C.Md.1967); the same is true of the analogous attorney-client privilege: Republic Gear Co. v. Borg-Warner Corp., 381 F.2d 551 (2 Cir. 1967); New York Underwriters Ins. Co. v. Union Const. Co., 285 F.Supp. 868 (D.C.Kan.1968). For conflicting considerations bearing on privileged communications in federal diversity litigation, see Annotation at 95 A.L.R.2d 320.

17. Metropolitan Life Ins. Co. v. McSwain, 149 Miss. 455, 115 So. 555 (1928); Yazoo & Miss. Valley R. Co. v. Decker, 150 Miss. 621, 116 So. 287 (1928); New Orleans & N. E. R. Co. v. Jackson, 145 Miss. 702, 110 So. 586 (1926).

18. *Yazoo*, supra, 116 So. at p. 292.

19. 311 F.2d 463 (2 Cir. 1962). See also Hart & Wechsler, The Federal Courts and the Federal System, 678 (1953).

"The patient-physician privilege is more than a rule of procedure since it goes to relationships established and maintained outside the area of litigation, and 'affect[s] people's conduct at the stage of primary private activity and should therefore be classified as substantive or quasisubstantive.'"

The court also notes that if the medical privilege were considered merely procedural or evidential, it would not be available in federal court diversity litigation, thereby undoubtedly creating the very forum-shopping which *Erie* sought to prevent. It is also significant that Rule 35(b) (2) refers to "waiver" (Fn. 4) of any privilege that a party may have. This language seems to recognize that where a privilege exists under state law, federal courts should recognize it, any substantive-procedural distinctions notwithstanding. Such has been the rule in the Fifth Circuit, which has held, without discussing the substantive-procedural dichotomy, that federal courts in this circuit will recognize a medical privilege created by state statute. Barnes v. United States, 374 F.2d 126 (5 Cir. 1967).

■ A brief survey of Mississippi decisions reveals no significant differences from the general law in other jurisdictions having medical privilege. The purpose of the privilege is to protect the patient by encouraging full and confidential disclosure to his physician of all information, however embarrassing, which might aid the physician in diagnosis and treatment.[20] As stated above, critics have frequently doubted that the privilege actually serves its stated purpose.[21] Cognizant of the injustice which sometimes may arise by a suppression of full evidence relating to the

true physical condition of a litigant, the Supreme Court of Mississippi stated in Killings v. Metropolitan Life Ins. Co., 187 Miss. 265, 192 So. 577, 131 A.L.R. 684 (1940), as follows:

"It is the court's duty to observe closely uses to which any procedural rule, whether of common law or statute, such as the statute declaring patient's communications to physician privileged, has been put, and prevent use thereof for ends of injustice or defeat of real justice when such improper use can at least be minimized by resort to other established procedural rules without intruding on what is essentially fundamental in judicial process or preservation of foundations of society." (In construing § 1536, Code of 1930, predecessor of present § 1697).

The above decision, which approved an instruction that the jury might draw an inference unfavorable to plaintiff for failing to offer a particular attending physician as a witness at trial, clearly recognizes that abuse may arise from a too-rigid application of the privilege statute.

■ Lawmakers and courts have attempted to prevent abuse of the medical privilege in a variety of ways. The problem has been attacked by statute in at least one state, which allows the presiding judge to refuse to recognize the privilege by directing a physician to testify "if in his opinion * * * [it] is necessary to a proper administration of justice".[22] Certain exceptions have also been engrafted upon the privilege statutes to cover situations in which the privilege tended to suppress evidence which in the interest of justice should have been revealed. The Mississippi

---

20. Johns-Manville Products Corp. v. Cather, 208 Miss. 268, 44 So.2d 405 (1950); 8 Wigmore 827.

21. Fn. 11, supra.

22. N.C.Gen.Stat. § 8-53 (1953) was construed by the Supreme Court of North Carolina in Sims v. Charlotte Liberty Mutual Ins. Co., 257 N.C. 32, 125 S.E.2d 326 (1962), as follows: "Our Legislature intended the statute to be a shield and not a sword. It was careful to make provision to avoid injustice and suppression of truth by putting it in the power of the trial judge to compel disclosure. Judges should not hesitate to require the disclosure where it appears to them to be necessary in order that truth be known and justice be done."

Legislature has engrafted such exceptions in the cases of workmen's compensation (Miss.Code Ann. § 6998–08(f)), venereal disease (§ 7079), insanity (§ 6909–04), alcoholism and drug addiction (§ 436–03), the Tumor Registry Act (§ 1697), and the amendatory statute allowing a patient's executor to waive the privilege following the patient's death (§ 1697). The Supreme Court of Mississippi has followed, in at least one case, the rule that when a party to a lawsuit takes the stand and voluntarily testifies as to his injuries, their treatment by physicians, and what he and his physician said about them, he waives his privilege.[23] Waiver of the privilege as to one of his physicians, however, does not operate as a waiver of the privilege as to any other physicians under Mississippi law.[24] Nor has the Mississippi court gone to the extent of declaring that the mere bringing of, or testifying in, a personal injury suit is a waiver of the privilege as to the injuries complained of.[25]

The Mississippi court has consistently held that, to be privileged, physician-patient communications must be in a professional context and generally must be with a purpose of treatment. This rule is in keeping with the great weight of authority in other jurisdictions.[26]

In three state criminal cases in which a physician appointed by the court or by the prosecution examined the accused, the privilege was held not to apply and the physician allowed to testify. In Hopkins v. State,[27] a physician appointed by the court to examine the accused and determine whether he was sane was allowed to testify on the ground that no physician-patient relationship existed. *Hopkins* relied upon Keeton v. State,[28] decided on almost identical facts. In Norwood v. State,[29] a physician who had examined the accused at the behest of the sheriff and prosecuting witness was allowed to testify on the ground that no physician-patient relationship existed to support the privilege. The court stated, quoting from 5 Jones on Evidence 4160:

> "That 'where a physician merely investigates by direction of the court or prosecuting attorney to ascertain the physical or mental condition of a person, for the purposes of the trial,' the privilege of the statute does not arise."

The court in *Norwood* further stated that:

> "Where a person is examined by a physician at the instance or with the approval of officers of the law for the purposes of law enforcement, and when the person so examined then and there knows, or the facts are such as to reasonably give knowledge that the examination is solely for the purpose aforesaid, and no illegal or otherwise wrongful means are used to secure the examination or inspection, the statute is not available." (130 So. at 733).

It is significant that in these criminal cases the physician's testimony was admitted and the privilege denied in spite of the objection that this violated the accused's Fifth Amendment right against self-incrimination. Although federal courts have held that Rule 35 does not apply to criminal cases for that very reason,[30] these state criminal cases are highly persuasive on the question of whether the state-created privilege attaches to examinations by a physician

23. Dennis v. Prisock, 254 Miss. 574, 181 So.2d 125 (1965).

24. Hill v. Stewart, 209 So.2d 809 (Miss. 1968).

25. Bryan Bros. Packing Co. v. Grubbs, 251 Miss. 52, 168 So.2d 289 (1964).

26. 8 Wigmore 835; 97 C.J.S. Witnesses § 293, p. 827; 107 A.L.R. 1495.

27. 212 Miss. 772, 55 So.2d 467 (1952).

28. 175 Miss. 631, 167 So. 68 (1936).

29. 158 Miss. 550, 130 So. 733 (1930).

30. United States v. Burdette, 161 F.Supp. 326 (D.C.Mich.1957), aff'd 254 F.2d 610, cert. denied 359 U.S. 976, 79 S.Ct. 887, 3 L.Ed.2d 842.

appointed by the court or the opposing party, as under Rule 35.

■ The same result has been reached in Mississippi civil cases. In Dixie Greyhound Lines v. Matthews,[31] a personal injury action, the 7-year old plaintiff, at her mother's request, voluntarily exhibited her injured hip to court and jury. The defendant thereupon moved for a physical examination of plaintiff by disinterested physicians, which was overruled by the trial court. On appeal the State Supreme Court held that the privileged communications statute

"[I]s in no way involved, as under that statute it is only 'communications made to a physician or surgeon by a patient under his charge or by one seeking professional advice' that are declared to be privileged. An examination by wholly disinterested physicians could not involve communications between physician and his patient or one seeking professional advice from such physicians, and if the action of the (lower) court in refusing permission for an examination of the parts of appellee's body alleged to have been injured is to be upheld, the basis of the right so to do must be found in the doctrine of the inviolability of the person." (170 So. at 688).

The court then concluded that the doctrine of inviolability of the person, which was recognized in Mississippi,

was not applicable because plaintiff had voluntarily waived that right by her exhibiting her body to the jury.[32] Finally, in Metropolitan Life Ins. Co. v. Evans,[33] a physician was employed by an insurance company to examine plaintiff to determine the extent of his injuries for purposes of deciding the company's liability. In holding that the physician could testify over plaintiff's objections, Chief Justice Smith stated:

"This privileged communications statute has no application, for the appellee was not a patient of this physician and was not seeking professional advice from him but, on the contrary, was submitting himself to an examination by the physician for the purpose of enabling him to report the facts he might thereby find to appellant." (184 So. at 427).

Thus, it is clear that in Mississippi the physician-patient privilege arises only when the patient consults the physician in his professional capacity and generally for the purpose of treatment, and it would not apply to a physician appointed by the state court. This conclusion would be an adequate basis for permitting the deposition of the examining physician as requested by defendant since evidence admissible "under the rules of evidence applied in the courts of general jurisdiction of the state" is, by Rule 43(a), F.R.Civ.P.,[34] made admissible in the federal district court sitting within the state.

31. 177 Miss. 103, 170 So. 686, 108 A.L.R. 134 (1936).

32. Four years later the U. S. Supreme Court held in Sibbach v. Wilson, 312 U.S. 1, 61 S.Ct. 422, 85 L.Ed. 479 (1940) that Rule 35 does not violate the "inviolability of the person" doctrine of Union P. R. Co. v. Botsford, 141 U.S. 250, 11 S.Ct. 1000, 35 L.Ed. 734 (1895).

33. 183 Miss. 859, 184 So. 426 (1938).

34. Rule 43. Evidence
(a) Form and Admissibility. In all trials the testimony of witnesses shall be taken orally in open court, unless otherwise provided by these rules. All evidence shall be admitted which is admissible under the statutes of the United States, or under the rules of evidence heretofore applied in the courts of the United States on the hearing of suits in equity, or under the rules of evidence applied in the courts of general jurisdiction of the state in which the United States court is held. In any case, the statute or rule which favors the reception of the evidence governs and the evidence shall be presented according to the most convenient method prescribed in any of the statutes or rules to which reference is herein made. The competency of a witness to testify shall be determined in like manner.

Nevertheless, we further hold that the operation of Rule 35, applicable to federal court personal injury litigation, is not dependent upon state law, and a determination of the admissibility of testimony of the court-appointed doctor may be altogether controlled by federal interpretation.

Rule 35, the constitutionality of which was narrowly upheld in a 5–4 decision by the Supreme Court in Sibbach v. Wilson (Fn. 32), calls for a physical or mental examination of a party to a lawsuit only when the party requesting the examination shows "good cause" for the examination and satisfies the court that the physical or mental condition of the party to be examined is "in controversy".[35] Even when the "good cause" and "in controversy" requirements are met, it is still in the sound discretion of the trial court whether to order the examination.[36] This discretion serves as a protection to a party whose feelings or reputation might be injured by an unwarranted disclosure, and thus tends to serve the purpose for which the physician-patient privilege was originally created.

In spite of the criticisms initially levelled at Rule 35, it appears to have worked well, and now has the approval of the great majority of both bench and bar.[37] Its purpose to inform the court[38] and the parties of the true facts as to the physical condition of the party claiming injury, has largely been achieved.[39] Only a few scattered cases have attempted to criticize or limit the rule.[40] Rule 35 in fact helps to further an important federal policy, i. e., securing "the just, speedy and inexpensive determination of every action". Rule 1, F.R.Civ.P. As a vital part of the whole liberal discovery policy of the Federal Rules, Rule 35 should not be lightly set aside, even where it conflicts with state substantive law, and particularly where it seems to conflict with a state law which could be construed as either substantive or procedural.[41]

Cases such as Sher v. DeHaven (Fn. 40), cited by plaintiff, which hold that a Federal Rule which is in derogation of a state statutory privilege should be strictly construed,[42] are not persuasive to this court in that they ignore the important federal policy involved and favor mere technical rules of construction in a field where technicalities should not be favored. They also conflict with the federal policy favoring the admission of evidence. Rule 43(a), F.R.Civ.P. (Fn. 34).

Plaintiff also relies on Lewis v. United Airlines Transport Corp.,[43] as

---

**35.** Those terms were finally defined in the leading case of Schlagenhauf v. Holder, 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964).

**36.** Teche Lines v. Boyette, 111 F.2d 579 (5 Cir. Miss.1940); Rule 35 says the court "may" order an examination.

**37.** For an excellent discussion of the history of the Rule, see Barnet, Compulsory Medical Examinations Under the Federal Rules, 41 Va.L.Rev. 1059 (1959).

**38.** The examining physician is considered an officer of the court. Warrick v. Brode, 46 F.R.D. 427 (D.C.Del.1969).

**39.** Peck, Impartial Medical Testimony, 22 F.R.D. 21 (1959).

**40.** Sher v. DeHaven, 91 U.S.App.D.C. 257, 199 F.2d 777, 36 A.L.R.2d 937 (1952).

**41.** See Fn. 16 and 17, supra. As the Supreme Court stated in Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed. 2d 8 (1965): "For the constitutional provision for a federal court system (augmented by the Necessary and Proper Clause) carries with it congressional power to make rules governing the practice and pleading in those courts, which in turn includes a power to regulate matters which, though falling within the uncertain area between substance and procedure, are rationally capable of classification as either." (at 472, 85 S.Ct. at 1144).

**42.** Sher v. DeHaven is cited with seeming approval by Wright in 2 A Barron & Holtzoff 391–2.

**43.** 32 F.Supp. 21 (D.C.Pa.1940).

**1242**

authority for giving Rule 35 a limited effect. In that case, the court stated that Rule 35 "impliedly recognizes that an examination made by a physician of a party is privileged unless the privilege is waived by pursuing the course referred to in the Rule" (i. e. waiver by asking for and obtaining a copy of the report). In the case at bar we are not concerned with "a physician *of a party*", but with a court-appointed physician. As the next paragraph of the *Lewis* opinion reveals, the privilege applies only to a physician "to whom the (patient) has obligated himself to pay a considerable sum of money" (at 23). This phrase shows conclusively that the privilege attaches only to the patient's own physicians, employed by him, and not to a physician appointed by the court. We thus do not believe that the *Lewis* court meant to say that the testimony of the examining physician appointed by the court under Rule 35 could ever be privileged. If the court in that case did so hold, however, we decline to follow it.

As defendant contends, to order a physical examination of a party and then refuse to admit the doctor's findings into evidence would be to ignore the purpose not only of Rule 35, but of the entire federal policy favoring both discovery and admissibility of evidence. To exclude the doctor's findings would seriously undermine that important federal policy as a vital aid to the just and speedy determination of lawsuits.

We, therefore, rest our decision upon two grounds: first, that under state law the examining doctor's testimony is not subject to medical privilege; and, secondly, by federal standards Rule 35 overrides any conflicting state-created rule, procedural or substantive, which would bar the testimony of an examining physician appointed by order of a federal court.

An order overruling plaintiff's objections to taking the medical deposition will be entered.