Fannie W. PRITCHARD, Executrix of the Estate of Rice H. Pritchard, Plaintiff,

v.

INSURANCE COMPANY OF NORTH AMERICA, Defendant.

No. DC 73-11-K.

United States District Court, N. D. Mississippi, Delta Division.

Sept. 11, 1973.

Anna Maddan, Batesville, Miss., George P. Cossar, Jr., Charleston, Miss., for plaintiff.

Fred M. Bush, Jr., Tupelo, Miss., for defendant.

## MEMORANDUM OPINION

KEADY, Chief Judge.

This case is before the court on plaintiff's motion to quash depositions sought by defendant of Dr. Joseph P. Rowland

and Dr. Charles R. Arkin, medical specialists of Memphis, Tennessee, who were treating physicians of Rice H. Pritchard (Pritchard) during his last illness. Pritchard died September 21, 1971, in Baptist Memorial Hospital while under the care of the two physicians. Plaintiff, as widow and executrix of Pritchard's estate, asserts that the knowledge gained by the treating physicians constitutes privileged communications under Mississippi Law [1] which may not be disclosed except with her consent. Defendant claims that the privilege was effectively waived by plaintiff.

The defendant, Insurance Company of North America (INA), issued a group insurance policy to Mid-South Cotton Ginners, whereby Pritchard as a member of the group was insured, to the extent of $100,000, for accidental death "resulting directly or independently of all other causes from bodily injuries caused by accident." Pritchard resided at Charleston, Mississippi, and was the operator of a cotton gin.

The policy does not contain any provision for the waiver of medical privilege as may be claimed by the insured or his estate, nor does it authorize the insurer to have access to such information.

Pritchard on August 13, 1971, was involved in a two-car automobile accident. The next day, he was seen by Dr. T. T. Lewis, his family physician, and admitted that day as a patient to a Charleston hospital. On August 18, Pritchard was transferred to the Baptist Memorial Hospital at Memphis, where he remained until he died. He was 64 years of age, and for several years prior to the date of the accident he had a history of hypertension and health problems.

Plaintiff, through her attorney, George P. Cossar, Jr., filed a claim with defendant for death benefits. On January 25, 1972, defendant's claim agent notified Cossar that he was developing the medical history on the insured, and information received by INA indicated that the deceased had been receiving medical treatment for several months prior to the accident, as well as confinement after the automobile accident. Cossar was requested to have the plaintiff execute medical authorization forms and furnish the names and addresses of all treating doctors within a two-year period "in order that we may complete our investigation and make the necessary disposition of the claim." Cossar on February 4 responded by enclosing authorizations executed by plaintiff and listing all of decedent's treating physicians, including Drs. Rowland and Arkin. The complete list included 9 doctors and 3 hospitals. The standard form of authorization, as signed, is copied in the margin.[2]

---

1. Miss.Code Ann. § 1697. Communications privileged.

"All communications made to a physician or surgeon by a patient under his charge or by one seeking professional advice are hereby declared to be privileged, and such physician or surgeon shall not be required to disclose the same in any legal proceeding except at the instance of the patient or in case of the death of the patient, by his personal representative or legal heirs in case there be no personal representative; . . . ."

2. "I hereby authorize any hospital, physician, or other person who has attended me or examined me to furnish to Insurance Company of North America and/or Life Insurance Company of North America, or its representative, any and all information with respect to all illness, medical history, consultation, prescriptions or treatment, and copies of all hospital or medical records. A photostatic copy of this authorization shall be considered as effective and valid as the original."

Address  Charleston, Miss.          Signature x Mrs. Rice H. Pritchard

Date x Jan. 31, 1972               "

[Defendant's counsel has advised the court's law clerk that possibly some of the forms which were circulated may have been interlined to change the word "me" to "my husband". This suggestion, however, has not been factually proved, nor if so, would it affect the conclusions hereinafter reached.]

Using these authorizations, INA obtained medical information from the two specialists sought to be deposed, who were of the view that Pritchard died from a ruptured aneurysm of the basilar artery, and that the automobile accident was noncontributory to death. INA denied liability.

Plaintiff on May 26, 1972, undertook to cancel and revoke the medical authorizations she had previously granted to INA and directed that such information be furnished only to her counsel. On January 8, 1973, plaintiff filed suit in the Circuit Court of Tallahatchie County, Mississippi, seeking to recover the full amount of the policy, and alleging that Pritchard had died as the result of accidental injuries sustained in the two-car collision. In her suit, plaintiff alleged that prior to the collision the insured had been under the care and treatment of physicians for four or five years for hypertension, which had been controlled by medication, and that the effects of the accident accelerated his hypertensive condition and resulted in his death.

Upon INA's timely petition, the action was removed to this federal district court on the ground of diversity of citizenship.

■ From the affidavits and other materials before us, it is clear that the plaintiff freely and voluntarily executed the medical authorizations requested by INA, doing so with the advice and assistance of her counsel and without coercion or overreaching by INA. Even so, she received no consideration or other thing of value for executing the authorizations and the record fails to show any element of estoppel which may properly be invoked to preclude her from withdrawing the authority thus gratuitously granted. Although the insurer availed itself of medical information obtained by the authorizations, INA has not changed its position, or otherwise acted to its prejudice, so as to make it inequitable for plaintiff later to withdraw the waiver. INA has simply denied liability. At trial it will be incumbent upon plaintiff to prove that the insured died from accidental means; this burden she must carry by proper evidence or lose her suit. At this juncture, however, the burden is upon INA to establish an effectual waiver of the physician-patient privilege in order to depose the insured's attending physicians.

■ This court in a diversity action is controlled by state law concerning the scope and effect of the physician-patient privilege and, absent an effectual waiver, a defendant may not depose plaintiff's own attending physicians. Hardy v. Riser, 309 F.Supp. 1234 (N.D.Miss. 1970). The parties assume, and the court finds, that it is Mississippi law which here applies as to the medical privilege since INA issued and delivered in that state its policy or certificate of insurance to Pritchard, a Mississippi resident. These plain facts cause the substantive rights of the parties under the insurance contract to be judged by Mississippi law. This is nonetheless true although Pritchard was in the last days of his life treated at Memphis, Tennessee, by medical specialists who resided in that city.

The precise issue thus raised is whether the medical authorizations signed by the plaintiff under the facts of this case constitute an irrevocable waiver of the medical privilege that cannot, over the objection of the insurer, be withdrawn by the deceased insured's personal representative. It will serve no useful purpose to consider the many Mississippi decisions that have discussed and interpreted the privileged communication statute (Fn. 1) in which the state Supreme Court has "broadly and sympathetically upheld the statute." Killings v. Metropolitan Life Ins. Co., 187 Miss. 265, 192 So. 577 (1940). In factual situations without any similarity to the case sub judice, certain state decisions have recognized that waiver of the medical privilege is judicially enforceable.

See cases cited in Hardy v. Riser, supra, 309 F.Supp. at 1239. Mississippi has no reported holding which settles the enforceability of waiver under any set of analogous facts.

■ It is, of course, well established that the benefits of the privileged communication statute may be waived by contract before trial, Fornea v. Goodyear Yellow Pine Co., 181 Misc. 50, 178 So. 914 (1938), and this principle was long ago extended to life insurance policies. Sovereign Camp W. O. W. v. Farmer, 116 Miss. 626, 77 So. 655 (Miss. 1918); New York Life Ins. Co. v. Burris, 174 Miss. 658, 165 So. 116 (1936). As noted, the policy in suit is utterly without any provision which vests in the insurer a contractual right to obtain medical information concerning policy claims by the insured, nor does it purport to waive the insured's claim of medical privilege. In the absence of words which expressly or by fair implication manifest an intention to waive the privilege, this court may not import such a provision into the insurance policy under any known rule of contract interpretation, especially since INA was the drafter of the document and all ambiguities must be resolved against the insurer.

INA argues broadly that once a privilege is waived, it is gone forever, the waiver cannot be retracted and the privilege may not later be reclaimed. Encyclopedic statements appear to be the principal authority which INA cites for this general statement.[3] The question arises whether the rule thus comprehensively stated applies where no consideration for the waiver has been received and no element of estoppel is present, although the gratuitous waiver is freely and understandingly executed and with the advice and consent of one's counsel. It is not surprising to note that the cases from the various jurisdictions are not in agreement on this issue. See 28 Am.Jur.2d, Estoppel and Waiver, § 159, p. 843.

Three lines of cases may be adverted to. Perhaps the weight of authority holds to the view that, absent estoppel, a waiver must be supported by an agreement founded on a valuable consideration.[4] A plain statement of this view is found in Chambers and Co. v. Equitable Life Assur. Society, 224 F.2d 338 (5 Cir. 1955), the Court stating at 345:

"A waiver is an intentional relinquishment or abandonment of a known right or privilege. The right, privilege or advantage allegedly waived must be in existence and be known to exist by the party possessing it, and this party must intentionally and voluntarily relinquish such right, advantage or benefit. Moreover, a waiver *must be supported by an agreement founded on a valuable consideration.*" (Emphasis added).

In accord is Hunter Milling Co. v. Koch, 82 F.2d 735 (10 Cir. 1936), where the Court quoted with approval the following text:

"A waiver, to be operative, must be supported by an agreement founded on a valuable consideration, or the act relied on as a waiver must be such as to estop a party from insisting on performance. . . ." at 736.

A second line of cases exemplified by decisions from New York and Texas holds that whether a waiver should be supported by consideration, in the absence of estoppel, depends upon whether the waiver is based on an agreement or is unilateral in character, and where the latter occurs, consideration is not essential. See cases cited in Fn. 13 and 14 at p. 844, 28 Am.Jur.2d, Ibid.

A third view, which looks at what is being waived, is that formal, as distinguished from substantial, rights may be validly waived without consideration, but where a substantial right is involved,

---

3. 28 Am.Jur.2d, Estoppel and Waiver, § 156, p. 838.

4. See cases cited Fn. 10, p. 843, 28 Am.Jur. 2d, Ibid.

there must be consideration for the waiver to be enforceable. United States v. Chichester, 312 F.2d 275 (9 Cir. 1963). The Ninth Circuit rule derives from California law, and appears to be supported by decisions from Iowa, Missouri and North Carolina.[5]

■■■ Since the Supreme Court of Mississippi has not yet had occasion to adopt the view applicable for its jurisdiction, we may look to the prevailing rule as a proper guide, and thus conclude that waiver of the statutory medical privilege affects substantial rights, and is not merely formal or procedural in nature, and, therefore, must be supported by an agreement founded on a valuable consideration. Since the elements of both consideration and estoppel are lacking, plaintiff's revocation of the medical authorizations she executed must be respected and her claim of medical privilege upheld.

We are reinforced in our view by certain cases from Arkansas which are cited by plaintiff and appear to be the only decisions factually in point. Aetna Life Ins. Co. v. McAdoo, 106 F.2d 618 (8 Cir. 1939); Fidelity Casualty Co. v. Meyer, 106 Ark. 91, 152 S.W. 995 (1912). The Eighth Circuit, in *McAdoo*, upheld a claim of medical privilege although the policy beneficiary had executed a voluntary waiver prior to the insured's denial of liability. The Court did not base its decision on the lack of consideration or an absence of estoppel—in our view, a sounder foundation—but regarded the waiver as merely limited to the purpose of adjustment and settlement and not extending to the use of medical information thus gained by the insurer in a suit involving the policy. Indeed, a like claim might be made here, as plaintiff contends, since INA's request for waiver was explicitly premised upon a statement that the medical information was needed "in order that we may complete our investigation and make the necessary disposition of the claim." We find it unnecessary to construe the scope of plaintiff's waiver, since whatever may be its scope, the authorization is revocable under well-recognized rules of law.

■■■ Finally, counsel for INA would emphasize that federal courts, which operate under rules providing for broad discovery, should endeavor to uncover, and not conceal, evidentiary truths. While this court is in full accord with that principle, it must be exercised, in diversity cases, with due respect to state-created privileges. In the case sub judice, the state-created medical privilege survives because of the circumstances. To refuse INA access to the deceased insured's medical information in advance of trial certainly does not end the matter, for the burden to make out a case, as well as the unfavorable consequence to the plaintiff for not producing the treating physicians, must be borne by the plaintiff.[6]

Let an order be entered sustaining plaintiff's motion to quash the medical depositions sought by defendant.

5. See cases cited Fn. 15, p. 844, 28 Am.Jur.2d, Ibid.

6. Mississippi recognizes the applicability of the following jury instruction in the hypothesized situation:
"The court instructs the jury for the defendants that under the law of Mississippi the communications between a physician and his patient are privileged where the relationship of doctor and patient exists, and that the plaintiff has a legal right under the statute to claim that privilege, and object to the doctor giving testimony acquired by virtue of that relationship, however, the court instructs you where the plaintiff has claimed such privilege, then you may reasonably infer therefrom that had the doctor testified that his testimony would be adverse to the interest of the plaintiff."
Reid v. Middleton, 241 Miss. 324, 130 So.2d 554 (1961); Killings v. Metropolitan, supra.